UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| INDIANA GRQ, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, et al., <br><br> Defendants. | CASE NO. 3:21-CV-227-DRL-MGG |

**OPINION AND ORDER**

Before the Court is Plaintiff Indiana GRQ, LLC ("IRG")'s Motion to Compel filed on January 21, 2022, seeking an order compelling Defendants American Guarantee and Liability Insurance Company ("Zurich"), Interstate Fire & Casualty Company ("Interstate"), Starr Surplus Lines Insurance Company ("Starr"), Chubb Custom Insurance Company ("Chubb"), General Security Indemnity Company of Arizona ("General Security"), Axis Surplus Insurance Company ("Axis"), and Ironshore Specialty Insurance Company ("Ironshore") (referred to collectively as "Defendant Insurers") to produce certain documents and to provide responses to certain interrogatories.

Two motions related to IRG's Motion to Compel are also pending and ripe before the Court: (1) Defendant Interstate's Motion to Join Certain Defendants'[1] Response to

---

[1] Collectively, all defendants are referred to as Defendant Insurers. When Interstate is not included on a motion, the collective body of defendants that excludes Interstate is referred to as "Certain Defendants".

IRG's Motion to Compel, which was filed on February 7, 2022; and (2) IRG's Motion for Leave to File a Supplemental Brief in Support of its Motion to Compel, which was filed on June 13, 2022.

For the reasons discussed below, Defendant Interstate's Motion to Join Certain Defendants' Response to IRG's Motion to Compel is granted, and IRG's Motion for Leave to Supplement its Motion to Compel is also granted. IRG's Motion to Compel is granted in part and denied in part.

I. **RELEVANT BACKGROUND**

On August 15, 2016, property owned by IRG was damaged in a flood, and IRG subsequently filed a claim with Defendant Insurers. Defendant Insurers accepted coverage for the claim and engaged both an independent adjuster, Micah Thoman (employed initially with loss adjusting company McLarens and later with Charles Taylor Adjusting), and consultants, J.S. Held, LLC and R.A. West & Associates (all referred to collectively as "the Adjustment Team"), to adjust the claim. Between January 2017 and May 2018, IRG paid in full its $1 million deductible, and Defendant Insurers paid over $2.6 million for costs, including environmental clean-up and a temporary electrical power solution at the damaged property. IRG states that these payments continued until Defendant Insurers received IRG's third-party reports regarding environmental and electrical damages and the totality of the loss at the property. [DE 34 at ¶ 44]. Following this, on August 23, 2019, Defendant Insurers sent IRG a denial of coverage letter, labeling elements of the claim as "new claims" and denying liability. [DE 34 at ¶ 76-77]. Accordingly, payments on the claim ceased.

IRG then filed the instant action in the Court of Common Pleas of Summit County, Ohio on June 17, 2020. Defendants removed this action to the Northern District of Ohio before the case was transferred to the Northern District of Indiana. After the case was transferred, the parties submitted a proposed discovery plan, which the Court adopted through its Scheduling Order issued on May 21, 2021. Consistent with the Court's Scheduling Order and the parties' discovery plan, IRG propounded requests for production of documents ("RFPs") on Defendant Insurers on June 23, 2021, and November 12, 2021. These requests sought various documents and communications pertaining to the Adjustment Team. IRG also served its first set of interrogatories on Defendant Insurers on November 12, 2021. Most interrogatories sought information on the work performed, those who performed it, and Defendant Insurers' stances on certain statements made in produced reports.

Defendant Insurers responded to IRG's discovery requests on July 26, 2021, and December 16, 2021. Defendant Insurers also served supplemental and amended objections and responses on January 13, 2022. Through these responses, Defendant Insurers objected to certain interrogatories and declined to produce certain documents sought by IRG.

First, Defendant Insurers did not produce documents in response to IRG's first RFP Nos. 11, 12 and 14 and second RFP Nos. 1-5, which sought "[d]ocuments and [c]ommunications in the possession, custody or control of" members of the Adjustment Team, including "emails, files, draft reports, retention agreements, or contracts." [DE 62-7 at ¶ 1]. Defendant Insurers objected to the requests on the grounds that the

requests were "overbroad and unduly burdensome as [they] expressly seek[] information in the possession of third-parties" [*Id.*]. Similarly, Defendant Insurers objected to IRG's Interrogatories Nos. 2, 5-13, and 16-19 as overbroad and unduly burdensome for seeking information concerning documents authored by members of the Adjustment Team. Second, in response to IRG's RFP Nos. 3, 4, 7-12, and 14, Defendant Insurers produced several adjuster reports, but with certain portions redacted to preserve their contended privilege as "loss reserve information". Finally, Defendant Insurers objected in part to IRG's Interrogatories Nos. 9-13 and 16-19 as premature contention interrogatories and further maintained that Interrogatories Nos. 3-19 were narrative interrogatories more appropriate for a deposition.

IRG and Defendant Insurers met and conferred on January 3, 2022, and January 6, 2022, to discuss these requests and objections to resolve these disputes without court action. The parties were unable to resolve these issues at these meetings, leading IRG to file the instant Motion to Compel.[2] The parties subsequently filed two additional motions based on issues raised in IRG's instant motion.

First, Defendant Insurers, except for Defendant Interstate, timely filed a response to IRG's Motion to Compel on February 4, 2022. While Defendant Interstate did file a

---

[2] A party filing a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Under this Court's Local Rules, such certification must be filed separately and include specific information including "the date, time, and place of any conference or attempted conference; and the names of the parties participating in the conference." N.D. Ind. L.R. 37-1(a)(1)–(2). "The court may deny any [discovery-related] motion . . . if the required certification is not filed." N.D. Ind. L.R. 37-1(b). Although IRG did not file its certification separately as required by local rule, the instant motion does include all the information required. Accordingly, the Court will address the motion on the merits.

Motion to Join Certain Defendants' Response to Plaintiff's Motion to Compel, it did not do so until February 7, 2022—one business day after the response deadline of February 4, 2022. *See* N.D. Ind. L.R. 7-1(d)(3)(A). Accordingly, IRG opposed Interstate's belated Motion to Join.

Moreover, on June 13, 2022, IRG filed a Motion for Leave to File a Supplemental Brief in Support of its Motion to Compel. IRG seeks to supplement its Motion to Compel to present information that emerged during a June 6, 2022, deposition of Zurich's lead claims handler, Shawn Keating. This motion became ripe on June 17, 2022, when Defendant Insurers filed their Response in Opposition.[3]

**II.    ANALYSIS**

    **A.    DEFENDANT INTERSTATE'S MOTION TO JOIN [DE 65]**

As a preliminary matter, the Court first considers Interstate's Motion to Join Certain Defendants' Response to IRG's Motion to Compel.

IRG filed its Motion to Compel on January 21, 2022. An adverse party is afforded fourteen days after service of a motion to serve and file a response brief. N.D. Ind. L.R. 7-1(d)(3)(A). Certain Defendants timely filed a response to IRG's Motion to Compel on February 4, 2022. Interstate, however, was not included in their response, and it did not file its own response on that date. Interstate subsequently filed a Motion to Join Certain Defendants' response, but not until February 7, 2022—one business day after any response to the instant Motion to Compel was due. Failure to timely file a response may

---

[3] As the discovery deadline in this matter was June 17, 2022, the Court ordered expedited briefing on this motion so that it could address the underlying Motion to Compel prior to the parties' dispositive motion deadline. *See* [DE 88].

subject a motion to summary ruling. *See* N.D. Ind. L.R. 7-1(d)(5). Accordingly, IRG contends that Interstate's motion should be denied because it failed to abide by N.D. Ind. L.R. 7-1(d)(5) and because Interstate did not confer with IRG to obtain its consent to file the motion after the deadline.

This Court retains inherent authority to manage its own docket. *See E.E.O.C. v. Fair Oaks Dairy Farms, LLC*, Civil No. 2:11-cv-265, 2012 WL 3138108, at *2 (N.D. Ind. Aug. 1, 2012) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). Accordingly, the Court construes Interstate's belated Motion to Join as a motion to extend its response deadline and accordingly, deem its motion to join timely filed. Federal Rule of Civil Procedure 6(b)(1)(B) governs such extension motions and requires a showing of both good cause and excusable neglect to justify belated requests for an extension of time.

The good cause standard "primarily considers the diligence of the party seeking amendment" of a deadline. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). Good cause exists when a movant shows that "despite [her] diligence the timetable could not have reasonably been met." *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D. Ind. 1995). Excusable neglect is understood to be a somewhat "elastic concept." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 391 (1993)). The determination of "excusable neglect" is an equitable one, "taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The pertinent factors include "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay,

including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

Here, consideration of these factors favors a finding of good cause and excusable neglect on the part of Interstate. Through its Motion to Join, Interstate first explains that while its counsel planned to timely join the response to be filed by Certain Defendants, its counsel failed to properly calendar the response deadline. Additionally, because of a family emergency on the date the response was due, Interstate's counsel left the office early. As counsel had failed to properly calendar the response deadline, counsel's assistant also left the office early that day. With both Interstate's counsel and its counsel's assistant out of the office, Interstate did not see the response filed by Certain Defendants until the following business day, February 7, 2022. However, after seeing that Certain Defendants had filed their response, counsel for Interstate promptly filed the instant Motion to Join.

While careless, such a calendaring error on the part of counsel can constitute excusable neglect. *See Castillo v. Nurnberg*, No. 3:12-CV-525, 2014 WL 1607386, *2 (N.D. Ind. Apr. 21, 2014) (finding excusable neglect where the delay was "attributable, in part, to [an] inadvertent calendaring error," was rectified within a week and a half, and was unlikely to result in great prejudice). Since Interstate is simply joining the response of Defendant Insurers and not developing any new arguments, there is little prejudice to IRG. Additionally, the delay in filing the instant motion was only one business day, so there has otherwise been little impact on the proceedings. While this calendaring error was reasonably within control of counsel, counsel's family emergency on the date of the

deadline impacted counsel's ability to timely become aware of Certain Defendants' response. Lastly, the quick response of Interstate evinces good faith, rather than an attempt at gamesmanship with the Court's deadlines.

Taken together, Defendant Interstate has shown good cause and excusable neglect for its belated motion. Therefore, Defendant Interstate's belated Motion to Join Certain Defendants' Response is **GRANTED**. [DE 65]. Accordingly, the Court will consider IRG's Motion to Compel as it pertains to all Defendant Insurers.

### B. IRG'S MOTION TO COMPEL [DE 61] AND MOTION TO SUPPLEMENT [DE 88]

Information is discoverable if it is nonprivileged, relevant to any claim or defense in the case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "For discovery purposes, relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) (internal citations omitted). "Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. *Id.* (citing *Sanyo Laser Prods., Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 502 (S.D. Ind. 2003)). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

When a responding party withholds discoverable information responsive to a party's discovery requests, a motion to compel discovery is allowed. Fed. R. Civ. P. 37(a)(3)–(4). After all, "[a] responding party cannot unilaterally impose conditions upon

its compliance with a discovery request." *Gray v. Faulkner*, 148 F.R.D. 220, 222 (N.D. Ind. 1992). Rather, the responding party carries the burden "to show why a particular discovery request is improper" and must do so with specificity. *Hills v. AT&T Mobility Servs., LLC,* No. 3:17-CV-556-JD-MGG, 2021 WL 3088629, *4 (N.D. Ind. July 22, 2021) (quoting *Kodish v. Oakbrook Terrace Fire Prot.*, 235 F.R.D. 447, 449–50 (N.D. Ill. 2006)). Yet, when the discovery request is overly broad or relevancy is not apparent, the requesting party must establish relevancy. *Vajner v. City of Lake Station, Indiana,* No. 2:09-CV-245, 2010 WL 4193030, at *2 (N.D. Ind. Oct. 18, 2010).

This Court has broad discretion in deciding whether to compel discovery and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines,* Inc., 95 F.3d 492, 495-96 (7th Cir. 1996). As such, the court "independently determine[s] the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

Here, IRG seeks an order compelling Defendants Insurers to produce (1) documents and communications generated by the Adjustment Team in response to IRG's First RFP Nos. 11-12 and 14 and Second RFP Nos. 1-5; (2) unredacted versions of documents containing loss reserve information in response to IRG's First RFP Nos. 3, 4, 7-12, and 14; (3) responses to Interrogatories Nos. 9-13 and 16-19, overruling Defendant Insurers' objection that these are premature contention interrogatories; and (4) responses to Interrogatories Nos. 3-19, overruling Defendant Insurers' objection that these requests are seeking improper narrative responses.

1. **Production of the Adjustment Team's Files**

The parties first dispute whether Defendant Insurers has control of the Adjustment Team's files such that Defendant Insurers must be compelled to produce its documents sought by IRG. IRG argues that the Adjustment Team is subject to the control of Defendant Insurers and that Defendant Insurers should have produced the requested documents in response to First RFP Nos. 11-12 and 14 and Second RFP Nos. 1-5 pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 34. However, Defendant Insurers contend that the Adjustment Team is comprised of various third parties over which they "have no right, contractual or otherwise to demand or order. . . to do anything." [DE 64 at 6] (internal quotations omitted). Defendant Insurers further insist that it is IRG's responsibility to request the files directly from these third parties via a subpoena *duces tecum* in accordance with Fed. R. Civ. P. 45.

Federal Rule of Civil Procedure 34 requires production of documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Typically, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Medical Assur. Co., Inc. v. Weinberger*, 295 F.R.D. 176, 181 (N.D. Ind. 2013) (internal citations omitted). However, "a party seeking production of documents bears the burden of establishing the opposing party's control over those documents." *Burton Mechanical Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992) (quoting *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438 (D.N.J. 1991)).

A document is considered under a party's "control" for purposes of Rule 34 when the party has a "legal right" to obtain it. *Bowman v. Consol. Rail Corp.*, 110 F.R.D.

525, 526 (N.D. Ind. 1986). A legal right to obtain information may be established by statute. *See id.* (finding a party had requisite control over his benefits application where a statute provided that "any claimant of benefits under this chapter shall, upon his request, be supplied with information from the Board's records pertaining to his claim"). Moreover, where a party has a contractual right to obtain documentation, courts have routinely found that the party has a legal right of control over the document and must produce it. *See Engel v. Town of Roseland*, No. 3:06 CV 430, 2007 WL 2903196, at *4 (N.D. Ind. Oct. 1, 2007) (holding that an inference of a contractual right to obtain bank statements from one's own bank exists); *see also, e.g., MSP Recovery Claims, Series LLC v. Mallinckrodt ARD, Inc.*, No. 20 CV 50056, 2020 WL 3618679, at *2 (N.D. Ill. July 2, 2020) (finding control pursuant to an "Assignment Agreement" that provided a contractual right to obtain requested documents); *Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del Estado*, No. 12 C 6357, 2013 WL 3776971, at *3 (N.D. Ill. July 18, 2013) (identifying control based upon the terms of a "Purchase Agreement").

Additionally, this court has also found control where a close relationship between the party receiving the request and the non-party exists, such as a parent-subsidiary relationship. *See Japan Halon Co. v. Great Lakes Chem. Corp.*, 155 F.R.D. 626, 628 (N.D. Ind. 1993) (finding control where the records requested were in the hands of the parent company and deposition testimony revealed an "extreme closeness" between the two entities). Other courts have considered similar relationships to be sufficient. *See Kravitz v. Jewelry Basics, Inc.*, No. CIV. A. 89-2657, 1990 WL 44899, at *5 (E.D. Pa. Apr. 12, 1990) (inferring control where the party receiving the request and non-party shared a

sole owner, CEO, and director); *Jacoby v. Hartford Life & Acc. Ins. Co.*, 254 F.R.D. 477, 479 (S.D.N.Y. 2009) (finding sufficient control where the non-party received 75% of its revenue from the party receiving the request).

In this case, while IRG has stated that Defendant Insurers have a "legal right to control their consultants who were hired by them," IRG has failed to offer any evidence of a legal right or contractual relationship to show that Defendant Insurers has control of the Adjustment Team's files. [DE 62 at 6]. Defendant Insurers do admit to retaining the Adjustment Team. [DE 62-8 ¶4]. However, IRG has not offered any evidence, such as a copy of the contract, statute, or evidence of corporate structure evincing "extreme closeness" which would demonstrate that Defendant Insurers had a legal right to obtain the requested documentation from the Adjustment Team. *MSP Recovery Claims*, 2020 WL 3618679, at *3 (finding that the defendants met its burden to show the plaintiff's control by pointing to specific terms of the plaintiff's contract with its assignors such as, "Client agrees to execute and deliver, or to cause to be executed and delivered, all such instruments and documents, and to take all such action as MSP Recovery may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Assignment of Claims").

Without more, the Court cannot find that IRG has met its burden to show that Defendant Insurers has a legal right to obtain the documents sought in the instant Motion to Compel. Accordingly, IRG's motion to compel Defendant Insurers to produce the documents from the Adjustment Team is denied.

**2.      Redacted Loss Reserve Information**

The next issue raised by IRG in its Motion to Compel pertains to Defendant Insurers' redaction of certain documents. Defendant Insurers produced several adjustment reports compiled by McLarens, a member of the Adjustment Team, in response to IRG's First RFP Nos. 3, 4, 7-12, and 14. These reports, however, included several block redactions labeled "Loss Reserve Information." *See* [DE 62-9]; [DE 62-10]. IRG argues that the loss reserve information redacted from Defendant Insurers' documents "provide[s] a window into what an insurer actually believed a claim was worth" and is therefore both discoverable and highly relevant to IRG's bad faith claim. Defendant Insurers contend that it properly redacted this information because loss reserve information is merely a product of regulatory compliance, and as such, they provide no "window" into any relevant or admissible information in this action.

On June 13, 2022, IRG filed a Motion for Leave to File a Supplemental Brief in Support of its Motion to Compel. In this motion, IRG states that based on deposition testimony from Zurich's lead claims handler, Shawn Keating, it has learned that the information redacted by Defendant Insurers was not actually loss reserve information. In response, Defendant Insurers explains that the redacted information consists of a loss reserve recommendation, which is part of what the Defendant Insurers consider in setting the loss reserve, and therefore contend that it is no more discoverable than the loss reserve proper.

The Court must first determine whether to consider this supplemental information. A Court considers a motion for supplemental briefing based on "how

helpful the new information will be in making a decision on the underlying motion."
*Sajda v. Brewton*, 265 F.R.D. 334, 338 (N.D. Ind. 2009). Here, the proffered information presents additional insight into the information redacted by Defendant Insurers. Furthermore, it would be helpful to the Court in determining whether Defendant Insurers' nondisclosure was substantially justified. Fed. R. Civ. P. 37(a)(5)(ii).  For these reasons, IRG's Motion for Leave to File a Supplemental Brief is granted, and the Court will consider both parties' supplemental arguments in addition to the parties' arguments from the initial motion to compel on this issue.

By statute, insurance companies are required to estimate a reserve for an outstanding loss. Ind. Code § 27-1-13-8(c). IRG, however, references the following portions of Mr. Keating's deposition testimony to support its contention that the redacted information cannot be loss reserve information:

> Q: When McLarens tells you what some of the estimate, like an estimated cost is going to be, is that a recommendation to you as acclaims adjuster about what loss reserve you should take?
>
> A: It's a recommendation of things that we could consider in our, you know, review of the client.
>
> Q: Of course, but are they recommending to you, specifically, that you Zurich, should set aside or reserve a certain amount of money for as their loss reserve.
>
> A: I mean, it's a recommendation to us what they're estimating the loss to be. Its not telling us where – where we need to set the reserve. That would be something we would need to discuss.

[DE 88-2 at 155-56].

In response, Defendant Insurers contend that whether the estimate of the loss provided to Zurich was used as a data point in creating the loss reserve, was a loss reserve recommendation, or was the loss reserve amount itself is a "distinction without a difference." [DE 91 at 3]. As such, Defendant Insurers contends that the redacted information is still nondiscoverable loss reserve information.

This Court acknowledges that "reserve information for a claim is ordinarily not discoverable." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, No. 1:13-CV-01316-JMS, 2014 WL 7360049, *6 (S.D. Ind. Dec. 23, 2014). However, pre-litigation loss reserve information is also not wholly irrelevant to breach of contract and bad faith claims. *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, No. 3:09-CV-493-JD-PRC, 2014 WL 5431223, at *6 (N.D. Ind. Oct. 24, 2014). Moreover, while loss reserve information may not be independently discoverable, where it constitutes a portion of a document that has been or will be produced, it cannot be redacted. *See Am. Chem. Servs., Inc. v. United States Fid. & Guar. Co.*, No. 2:13-CV-177-TLS-JEM, 2014 WL 12774928, *5 (N.D. Ind. Dec. 23, 2014) (holding that "[t]o the extent that reserve information is included in other discoverable documents, it should not be redacted"); *see also Cummins, Inc. v. Ace Am. Ins. Co.*, No. 1:09-CV-00738-JMS, 2011 WL 130158, *12 (S.D. Ind. Jan. 14, 2011) (holding that "[i]nsurers are not permitted to redact loss reserves information from documents that the Insurers otherwise have produced or will produce"); *Westfield Ins. Co. v. TCFI Bell SPE III LLC*, No. 116CV02269TWPMJD, 2018 WL 3439656, at *3 (S.D. Ind. May 25, 2018), amended, No. 116CV02269TWPMJD, 2019 WL 1330456 (S.D. Ind. Mar. 25, 2019) (distinguishing *Indianapolis Airport Auth.* and holding that where a party

asserts a bad faith claim, unredacted loss reserves must be produced in already produced documents).

Based on this, it is not necessary to distinguish whether the information is loss reserve information or merely a recommendation forming part of such reserve information. Here, IRG has an existing bad faith claim that has not been disposed of and the documents referencing loss reserve information have already been produced. Accordingly, Defendant Insurers are not permitted to redact information that they contend is loss reserve information on documents produced. *Am. Chem. Servs., Inc*, 2014 WL 12774928 at *5.

Thus, IRG's motion to compel as to the redacted loss reserve information is granted. Defendant Insurers are ordered to produce unredacted versions of the documents containing loss reserve information *instanter,* or no later than July 1, 2022.

### 3. Contention And Narrative Interrogatories

Finally, IRG also seeks an order compelling Defendant Insurers to respond to its interrogatories. IRG contends that Defendant Insurers refused to respond to Interrogatories Nos. 9-13 and 16-19 on the grounds that they are premature contention interrogatories. IRG also states Defendant Insurers objected to Interrogatories Nos. 3-19 contending they improperly call for a narrative response and would be more appropriate for a deposition. Although these were two of the objections made by Defendant Insurers in their responses to IRG's Interrogatories, Defendant Insurers also raised other objections: attorney-client privilege, work-product doctrine, and objections that the interrogatories sought information pertaining to communications written by

third parties or information already in IRG's possession. IRG fails to raise or otherwise address any of these other interrogatory objections.

IRG first contends that Defendant Insurers refused to respond to interrogatories No. 9-13 and 16-19 because they were premature contention interrogatories. For example, Interrogatory No. 9, and Defendant Insurers' response, read as follows:

> **INTERROGATORY NO. 9:** Identify which portion of the following statement in Bates-number McLarens 002588, if any, You contend is incorrect, and explain why: "The water also made its way to the Assured's system of underground tunnels and basement. Most of these tunnels / basement were flooded completely. However, a small portion of tunnels may have only been flooded to approximately 60 to 70% of the way full."
>
> **ANSWER:** AGLIC objects to this interrogatory as overbroad and unduly burdensome as it seeks information from AGLIC concerning a document authored by McLarens. That information is necessarily within the possession, custody or control of McLarens and not AGLIC. AGLIC also objects to this interrogatory as overbroad and unduly burdensome as this interrogatory seeks a narrative response more appropriate for a deposition. AGLIC further objects to this interrogatory as this interrogatory constitutes a "contention interrogatory" which this District has deemed to be premature at this early stage of the litigation. *See In re: H&R Block Mortgage Corp.*, 2007 U.S.Dist. LEXIS 7104, *24-25 (N.D. Ind. 2007).

[DE 62-8 at 8]. Defendant Insurers makes these same objections to Interrogatory Nos. 10-13, and 17-19. In addition, Defendant Insurers objected to Interrogatory No. 16 contending that it sought information already in IRG's possession.

IRG also contends that Defendant Insurers' narrative objection to Interrogatories no. 3-19 should be overruled. Interrogatory No. 3, and Defendant Insurers' response, for example, read as follows:

> **INTERROGATORY NO. 3:** Identify the following for each meeting, telephone call, or other Communication You or Your Claim Representatives had with the Insured regarding the South Bend Claim:
>
> a. The Date;
>
> b. The name and role of each Person present; and
>
> c. The substance of what was discussed during the meeting, telephone call, or other Communication
>
> **ANSWER:** AGLIC objects to this interrogatory as overbroad and unduly burdensome as this interrogatory seeks a narrative response more appropriate for a deposition. AGLIC further objects to this interrogatory as overbroad and unduly burdensome as it necessarily seeks information already in the possession of Plaintiff.
>
> Subject to and without waving [sic] its objections and subject to Fed. R. Civ. P. 33(d), AGLIC refers Plaintiff to its claim file for information responsive to this interrogatory including, but not limited to, the Insurers' August 23, 2019 position letter which denied coverage [sic] for the April 2019 Electrical Claim and the July 2019 Environmental Claim ("New Claims").

[DE 64-6].

Though "[t]he burden rests upon the objecting party to show why a particular discovery request is improper," courts have repeatedly held that where a party fails to raise or address the opposing party's initial objections in its motion to compel, they have forfeited their challenge. *See Leeper v. A.J. Lines, Inc*, No. 2:15-CV-414-WCL-PRC, 2016 WL 6610833, *2 (N.D. Ind. Nov. 9, 2016) (holding that where the objecting party has offered bases for its objections and the requesting party does not offer any argument as to why the court should overrule the objection, the motion to compel will be denied for lack of argument); *see also Est. of Logan v. City of S. Bend*, No. 3:19-CV-495-DRL-MGG, 2021 WL 389412, *9 (N.D. Ind. Feb. 3, 2021) (holding a failure to mention the objecting parties' deliberative process privilege objection in its motion to compel

constituted waiver of any argument against application of the privilege); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 520 (N.D. Ill. 2020) (holding that a failure to address objections in a motion to compel resulted in a forfeit of their challenge of the refusal to produce requested communications).

Additionally, the requesting party must still meet its own burden of showing why the producing party's responses are "inadequate, incomplete, or unresponsive." *Design Basics, Inc. v. Granite Ridge Builders, Inc.*, No. 1:06-CV-72, 2007 WL 1830809, *2 (N.D. Ind. June 21, 2007); *see also Barnes v. Brown Cnty.*, No. 13-CV-607, 2016 WL 126748, *6 (E.D. Wis. Jan. 11, 2016) (denying a motion to compel based on movant's failure to show a lack of responsive information or that the objections made were inappropriate).

Defendant Insurers accurately note that they "have not refused to respond to any interrogatory solely because it seeks a narrative response." [DE 64 at 16]. This is also true of the interrogatories they objected to as contention interrogatories. IRG, however, makes no argument regarding the additional objections raised. "[P]erfunctory and undeveloped argument . . . unsupported by pertinent authority, hardly merits consideration." *Autotech Techs. L.P. v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 443 (N.D. Ill., 2006) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994)).

Furthermore, Defendant Insurers provided answers to many of these interrogatories despite its objections. For example, in response to Interrogatory No. 15, Defendant Insurers identifies all companies and persons retained to analyze or provide input on the claim at issue. On these, IRG makes no argument as to why any of the

presented responses are otherwise "inadequate, incomplete or unresponsive." *Design Basics, Inc*, 2007 WL 1830809 at *6.

Accordingly, IRG's motion to compel as to Defendant Insurers' interrogatory responses is denied based on its failure to adequately address all of Defendant Insurers' objections raised.

### III. CONCLUSION

For the reasons discussed above, the Court:

- **GRANTS** Interstate's Motion to Join [DE 65];

- **GRANTS** IRG's Motion for Leave to File a Supplement Brief [DE 88]; and

- **GRANTS IN PART AND DENIES IN PART** IRG's Motion to Compel. [DE 61]. IRG's Motion is **GRANTED** with respect to Defendant Insurers' redaction of loss reserve information in various documents produced. Accordingly, Defendant Insurers are **ORDERED** to produce unredacted versions of these documents *instanter*, but no later than **July 1, 2022.**

**SO ORDERED** this 27th day of June 2022.

s/Michael G. Gotsch, Sr.
_____
Michael G. Gotsch, Sr.
United States Magistrate Judge