IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF
INDIANA SOUTH BEND DIVISION

| | |
|---|---|
| INDIANA GRQ, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AMERICAN GUARANTEE AND ) <br> LIABILITY INSURANCE COMPANY, et al., ) <br> ) <br> Defendants. ) <br> ) | Cause No. 3:21-cv-00227-DRL-MGG |

**MEMORANDUM IN SUPPORT OF INDIANA GRQ, LLC'S MOTION
FOR PARTIAL SUMMARY JUDGMENT REGARDING
THE $30 MILLION FLOOD SUBLIMIT**

**INTRODUCTION**

Plaintiff Indiana GRQ, LLC ("IRG") files this Motion for Partial Summary Judgment Regarding the $30 Million Flood Sublimit ("the Motion") against Defendant Insurers[1] pursuant to Federal Rule of Civil Procedure 56, Local Rule 56-1, and the Court's May 23, 2022 Order to establish as a matter of law that the $30 million flood sublimit in the insurance policy at issue applies to IRG's flood-related losses at its property at 701 Chippewa Avenue in South Bend, Indiana (the "South Bend Property"). This result is compelled by a straightforward reading of the insurance policy.

---

[1] Defendant Insurers are American Guarantee and Liability Insurance Company ("Zurich"), Interstate Fire & Casualty Company ("Interstate"), Starr Surplus Lines Insurance Company ("Starr"), Chubb Custom Insurance Company ("Chubb"), General Security Indemnity Company of Arizona ("General Security"), Axis Surplus Insurance Company ("Axis"), and Ironshore Specialty Insurance Company ("Ironshore").

1

**UNDISPUTED FACTS**

On August 15, 2016, heavy rains flooded IRG's South Bend Property.² O'Neil Dec. at Ex. A at Zur_C01716 (hereinafter referred to and cited as the "McLarens Report"). Tenant space on the first floor was covered by several feet of water. *Id*. In addition, water inundated the South Bend Property's basement and underground electrical vaults, destroying electrical switchgear, transformers, main switches and related electrical equipment, and components in 6 electrical distribution substations. *Id*. The floodwater contained PCBs and other hazardous material. *Id*. IRG timely reported the flood as a claim to Defendant Insurers, who retained McLarens as their independent adjuster. *Id*.

During the period from April 15, 2016, to April 15, 2017, IRG was insured under a tower of property insurance with total limits in excess of $500 million. O'Neil Dec. at Ex. B (hereinafter referred to and cited as the "Policy") at § 2.03.³ The Insuring Agreement states:

> This Policy insures against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property at an Insured Location described in section II-2.01, all subject to the terms conditions and exclusions stated in this Policy.

Policy at § 1.01. A Covered Cause of Loss is defined as "All risks of direct physical loss of or damage from any cause unless excluded." *Id*. at § 7.11. The Policy contains specific wording for four "Described Causes of Loss," one of which is Flood. *Id.* at § 5.03.03.

The Policy's Limits of Liability section provides a limit for the Described Cause of Loss

---

[2] Background information regarding the insurance claim is taken from a McLarens insurance adjuster report authored by an agent of Defendant Insurers. Although these facts surrounding the claim are undisputed, they are not material to this motion. As such, they are provided as background information only.

[3] Defendant Insurers each issued their own policies for IRG's tower of property insurance as part of a "quota share," with each following form in all material aspects to the policy issued by Defendant Zurich, including with respect to the $30 million flood sublimit identified below and discussed in this Motion. As part of this quota share, Defendant Zurich accepted 66.67% of the risk. McLarens Report at Zur_C01718-19. Defendant Interstate accepted 10% of the risk *Id*. Defendants Starr, Chubb, and General Security each accepted 3.33% of the risk. *Id*. Defendants Axis and Ironshore each accepted 6.66% of the risk. *Id*.

of Flood as $30,000,000 in the Annual Aggregate, as follows:

| Limit | Description |
|---|---|
| $30,000,000 | **FLOOD**[4] in the **Annual Aggregate**[5] but not to exceed the following limits in the **Annual Aggregate**: |
| | a). $10,000,000 as respects Locations with any part of the legal description within a **Special Flood Hazard Area (SFHA)**[6] <u>and not otherwise listed herein</u>. |

\* \* \*

*Id.* at § 2.03.06 (underline emphasis added). The Policy includes a Schedule of Locations/Statement of Values that specifically lists the South Bend Property, *id.* at IRGQ036861, and the Schedule of Locations/Statement of Values is specifically incorporated by reference into the Policy. *Id.* at §§ 2.01.01; 2.03.06; 2.05.05.02.02.02.01; *Id*. at IFCC-U0002481 to IFCC-U0002485; *Id*. at IFCC-U0002912 to IFCC-U0002916; *Id*. at IFCC-U0003067 to IFCC-U0003068; *Id*. at IFCC-U0003255 to IFCC-U0003257; O'Neil Dec. at Ex. C (hereinafter referred to and cited as "Keating Dep.") at 23-28; O'Neil Dec. at Ex. D (hereinafter referred to and cited as ("Hargan Dep.") at 75-80.

---

[4] The Policy defines Flood as "[a] general and temporary condition of partial or complete inundation of normally dry land areas or structure(s) caused by: The unusual and rapid accumulation or runoff of surface waters, waves, tides, tidal waves, tsunami, the release of water, the rising, overflowing or breaking of boundaries of nature or man-made bodies of water; or the spray there from all whether driven by wind or not; or Mudflow or mudslides caused by accumulation of water on or under the ground. Flood also includes the backup of water from a sewer, drain or sump caused in whole or part by Flood. Flood also includes Storm Surge if shown on the declarations as part of Flood." *Id.* at § 7.22.

[5] Annual Aggregate is defined as "[t]he maximum amount of loss or damage payable in any one (1) Policy Year regardless of the number of Occurrences within the same policy year." *Id.* at § 7.02.

[6] Special Flood Hazard Area is defined as "an area defined by FEMA (The Federal Emergency Management Agency) or any foreign equivalent that will be inundated by the flood event having a 1-percent change of being equaled or exceeding in any given year. The 1-percent annual change flood is also referred to by FEMA as the base flood or 100-year flood. SFHA's per FEMA include but are not limited to Zone A, Zone AO, Zone AH, Zones A1-30, Zone AE, ZoneA99, Zone AR, Zone AR/AE, Zone AR/AO, Zone AR/A1-A30, Zone ARIA, Zone V, Zone VE, and Zones Vl-V30. If not defined by FEMA or any foreign equivalent, it is an area that will be inundated by the flood event having a 1-percent chance of being equaled or exceeded in any given year." *Id.* at § 7.52.

**APPLICABLE LEGAL STANDARDS**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. A disputed fact must be "material," which means that it might affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts do not preclude summary judgment. *Id*. A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249.

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, a party opposing summary judgment "cannot meet [its] burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cnty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

With respect to insurance policy interpretation, when a federal court's jurisdiction exists on diversity grounds, state law applies to substantive issues. *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). In Indiana, an insurance policy is a contract and therefore it is subject to the same rules of construction as other contracts. *Dunn v. Meridian Mut. Ins. Co.*, 836

4

N.E.2d 249, 251 (Ind. 2005). Courts reviewing an insurance coverage dispute interpret the insurance contract as a matter of law. *Id*. If its terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning. *Id.* Courts should interpret a contract so as to harmonize its provisions, rather than place them in conflict. *Id*. at 252. Further, when interpreting an insurance contract, "courts must look at the contract as a whole." *State Farm Mut. Auto. Ins. Co. v. Cox*, 873 N.E.2d 124, 127 (Ind. Ct. App. 2007).

In construing an insurance policy, courts look to the perspective of "an ordinary policyholder of average intelligence," and if "reasonably intelligent people may interpret the policy's language differently," the policy is ambiguous. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). Further, ambiguities are strictly construed against the insurer, particularly where an exclusion or reduction of coverage is concerned. *See, e.g., Am. Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224, 232 (Ind. Ct. App. 2004); *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996); *West Bend Mut. v. Keaton*, 755 N.E.2d 652, 654 (Ind. Ct. App. 2001) ("While insurers are free to limit the coverage of their policies, such limitations are enforceable only if clearly expressed").

## ARGUMENT

### A. The $30 Million Flood Sublimit Applies Because the South Bend Property is Specifically Listed in the Policy

The Policy unambiguously provides that IRG's loss stemming from the August 15, 2016 flood event is subject to the $30 million flood limit because lesser sublimits apply only to properties "not otherwise listed herein." The South Bend Property is specifically listed in the Schedule of Locations/Statement of Values, and that Schedule of Locations/Statement of Values is part of, and indeed integral to, the Policy. Hence, the 30 million sublimit applies to IRG's flood-related losses.

The Limits of Liability and Coverage Part section of the Policy limits flood coverage to $30 million, stating;

| Limit | Description |
|---|---|
| $30,000,000 | **FLOOD** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate**: |
| | a). $10,000,000 as respects Locations with any part of the legal description within a **Special Flood Hazard Area (SFHA)** <u>and not otherwise listed herein</u>. |
| | \* \* \* |

Policy at § 2.03.06 (emphasis added).

For a lesser than $30 million sublimit to apply, two conditions must be met. First, the property must fall within a Special Flood Hazard Area ("SFHA"). Defendant Insurers have appointed an expert to testify regarding this issue.[7] Second, the property must not be "otherwise listed herein." The South Bend Property is listed in the Schedule of Locations/Statement of Values, which is incorporated by reference into the Policy, and therefore is part of the Policy. As such, the South Bend Property location is "otherwise listed herein." Accordingly, the $30 million sublimit for Flood, and not a lesser limit, applies.

The Policy itself states that the Schedule of Locations/Statement of Values is part of the Policy. As a general rule, a document is incorporated into a contract if there is a "clear and express intent to be bound" by its terms. *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 754–55 (Ind. 2018); *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1036 (Ind. Ct. App. 1998) ("Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement

---

[7] Whether or not the property falls within the SFHA is immaterial to this Motion because the second condition is not met.

of the parties"). Here, the Policy itself repeatedly states that the Statement of Values/Schedule of Locations is to be read as part of the Policy. For example:

- An Insured Location is defined to include those "[l]isted on a Schedule of Locations on file with [*sic*] Company; per statement of values dated 03/01/2016." Policy at § 2.01.01.

- The limits of liability section states that the policy covers Property Damage "at scheduled locations on file with the Company per statement of values dated 03/01/2016." *Id*. at § 2.03.06

- The deductible section of the policy incorporates "the most current Statement of values on file with the company as of the date of loss." *Id*. at § 2.05.05.02.02.02.01.

- Policy endorsements issued after the inception of the Policy made alterations to the locations included in the Schedule of Locations/Statement of Values, explaining in each instance that such alterations "change . . . the policy." *Id*. at IFCC-U0002481 to IFCC-U0002485; *Id*. at IFCC-U0002912 to IFCC-U0002916; *Id*. at IFCC-U0003067 to IFCC-U0003068; *Id.* at IFCC-U0003255 to IFCC-U0003257.

Courts across the country have also universally held that a Schedule of Locations/Statement of Values is an integral part of an insurance policy. *See, e.g., RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 132 (Tex. 2015) (collecting cases explaining that schedules of locations and statements of value are part of blanket coverage insurance policies and are often used to determine overall premiums); *Warwick Corp. v. Turetsky*, 227 So. 3d 621, 624 (Fla. Dist. Ct. App. 2017) (holding that "statement of values" on file with insurer was incorporated by reference into the property insurance policy notwithstanding that it was not attached to the policy itself); *Castle Oil Corp. v. Ace Am. Ins. Co.*, 137 A.D.3d 833, 834-37, 26 N.Y.S.3d 783, 785 (2016) (recognizing that "[t]he policy contained a Schedule of Locations" applicable to determination of the insured value of properties and the calculation of the flood sublimit deductible); *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 341 (S.D.N.Y. 2019), *aff'd*, 828 F. App'x 84 (2d Cir. 2020) (holding that spreadsheet listing locations and values was incorporated into policy through policy's reliance on "schedule on file with the underwriters"); *McDermott v. Great Am. All. Ins. Co.*, 2005 WL 2437020, at *3 (N.D.N.Y. Sept. 30, 2005) (same); *Laureate Educ.,*

*Inc. v. Ins. Co. of the State of Pennsylvania*, No. 11 CIV. 7175 CRK, 2014 WL 1345888, at *6-*8 (S.D.N.Y. Mar. 31, 2014) (holding that statement of values was necessary to interpret clause in policy and rejecting argument that statement of values was extrinsic evidence).

The Court's analysis in *New York Univ. v. Factory Mut. Ins. Co.*, 374 F. Supp. 3d 315, 329 (S.D.N.Y. 2019), *aff'd*, 2021 WL 3136078 (2d Cir. July 26, 2021) is particularly instructive. There, a dispute arose between New York University and its insurer related to which flood limit was applicable to the University's loss resulting from Superstorm Sandy. *Id*. at *321. The property policy at issue provided a general $250 million flood limit applicable to all locations, but a $40 million flood sublimit for locations "at the NYU Hospital Center and School of Medicine located at 550-580 First Avenue, 401 & 435 E 30th Street, 317 & 400 E. 34th Street and 3010 [FDR] Drive, New York, NY." *Id.* at *319-*20. The University asserted that the $40 million sublimit only applied to buildings with the specific address range listed in the provision, essentially arguing that the flood sublimit provision could be interpreted literally without regard to any other elements of the policy. *Id.* at *328-*29. The insurers disagreed, arguing that "the address portion of the flood sublimit should be read as a reference point telling the reader where to find" the relevant buildings to which it applied. *Id*. at *328-*29. After acknowledging the University's textual argument, the Court observed that the "schedule of locations" for the policy was "incorporated therein" and was "[o]f particular relevance" to which flood limit applied. *Id*. The court then analyzed the schedule of locations in order to interpret the flood limit provision. *Id*. at 330. In affirming this decision, the United States Court of Appeals for the Second Circuit agreed that any interpretation of the flood sublimit provision needed to be "reconcile[d]" with the terms and intent of the policy's schedule of locations. *New York Univ. v. Factory Mut. Ins. Co.*, No. 20-1093-CV, 2021 WL 3136078, at *2 (2d Cir. July 26, 2021).

Just as with *New York University*, the terms of the Policy's limits of liability must be read in concert with the Schedule of Locations/Statement of Values to determine which locations are subject to the $30 million sublimit, or perhaps subject to a reduced limit.   Reading the Schedule of Locations/Statement of Values in this context, the South Bend Property is "otherwise listed herein" and thus the larger $30 million sublimit controls.

Indeed, even the Defendant Insurers' claim adjusters who handled this claim and are familiar with the Policy's terms and conditions testified entirely consistent with and in support of IRG's position and the caselaw cited above.  For example, Sean Keating, Zurich's claims adjuster, testified that the Statement of Values listing the South Bend Property location must be read into the Policy to determine coverage afforded:

> Q: All right, and what is a Statement [of] Value?  What do you mean by that?
> A: It's got the schedule of the locations that they own, and they're putting - - they - - the insured is putting kind of a - - a value for those locations.
> Q: If it is a blanket limit, what's the purpose of listing separate values for each location on the SOV?
> A: It's - - again, it's - - it's telling which locations have covered - - or have coverage that are subject to that blanket limit.  It's not saying that every location owned by the insured would be part of that blanket limit.  It has to be on the Statement of Values for it to be subject to that blanket limit of insurance.

Keating Dep. at 24:9-22.  He also testified that the Statement of values is necessary to give meaning to the Policy:

> Q: You need the Statement of Values to give meaning to the - - a blanket policy like this. Correct?
> A: Correct.

Keating Dep. at 25:22-24.  Likewise, Defendant Interstate's Fed. R. Civ. P. 30(b)(6) deponent, Keith Hargan, testified that the Statement of Values/Schedule of Locations must be read into the Policy in order to understand the coverage afforded:

9

    Q:    Would you need to refer to the statement of values in order to properly understand the scope of coverage provided by the policy?

    A:    Yes.

Hargan Dep. at 78:20-24.

The South Bend Property is listed on the Schedule of Locations/Statement of Values and the Schedule of Locations/Statement of Values is part of the Policy. Accordingly, the $30 million Flood sublimit applies and not a lesser sublimit.

### B. IRG is Entitled to Summary Judgment Even if Defendant Insurers Have a Different Interpretation of the Phrase "Otherwise Listed Herein."

There is no legitimate dispute that the South Bend Property is listed in the Schedule of Locations/Statement of Values and that the South Bend Property is incorporated by reference into the Policy. This is beyond the bounds of reasonable challenge. Pursuant to Indiana's well-established black-letter insurance contract interpretation principles, these undisputed facts establish all that is necessary to grant partial summary judgement in favor of IRG, regardless of whether Defendant Insurers proffer a different interpretation of the meaning of the Policy's phrase "otherwise listed herein."

Defendant Insurers have, from the start, misread the policy. Initially, they applied a lesser $10 million sublimit to IRG's loss merely because they believed that the property was located in a SFHA, completely ignoring the "not otherwise listed herein" requirement. Now, they allege that "otherwise listed herein" means listed somewhere in the Policy other than in the Schedule of Locations/Statement of Values. Such non-specific textual gymnastics runs counter to Indiana's established rules of construction.

In construing an insurance policy, Indiana courts look to the perspective of "an ordinary policyholder." *Bradshaw*, 916 N.E.2d at 166. An ordinary policyholder would believe that the rightful place to list locations subject to the Policy and its various limits is in the Schedule of

Locations/Statement of Values, *the only place* locations are specifically noted. The insurance company adjusters in this case shared this view as well, recognizing the role and impact the Schedule of Locations/Statement of Values plays for the Policy's coverages. *See* Keating Deposition at 24:9-22; 25:22-24; Hargan Deposition at 78:20-24.

If "reasonably intelligent people may interpret the policy's language differently," the policy is ambiguous. *Bradshaw*, 916 N.E.2d at 166. To the extent that the Defendant Insurers' new argument is one that a reasonably intelligent person could believe, the Policy is ambiguous. Ambiguities are strictly construed against the insurer, particularly where an exclusion or reduction of coverage is concerned, such as here. *See, e.g., Am. Family Mut. Ins. Co.*, 803 N.E.2d at 232 ("if there is an ambiguity, the policy should be interpreted most favorably to the insured, and construed to further the policy's basic purpose of indemnity"); *Am. States Ins. Co. v. Kiger*, 662 N.E.2d at 947 ("This strict construal against the insurer is driven by the fact that the insurer drafts the policy and foists its terms upon the customer. 'The insurance companies write the policies; we buy their forms or we do not buy insurance'") (citing *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136, 142 (Ind. Ct. App. 1981)).

In sum, IRG proffered an objectively reasonable interpretation of the phrase "not otherwise listed herein" that takes into account the Policy as a whole. It is entitled to deference and the benefit of that interpretation as against any contrary interpretation advanced by Defendant Insurers. To hold otherwise would enable the Insurers to artificially restrict coverage through unclear or ambiguous terms, a result that is not permitted under Indiana Law. *See, e.g.*, *West Bend Mut.*, 755 N.E.2d at 654 ("While insurers are free to limit the coverage of their policies, such limitations are enforceable only if clearly expressed").

## **CONCLUSION**

For the forgoing reasons, Plaintiff Indiana GRQ, LLC'S Motion for Partial Summary Judgment Regarding the $30 Million Flood Sublimit should be granted.

Dated: July 8, 2022                                          Respectfully submitted,

                                                                          /s/ *Mark E. Miller*
                                                                          Mark E. Miller
                                                                          Brian G. Friel
                                                                          William T. O'Neil
                                                                          Benjamin W. Massarsky
                                                                          MILLER FRIEL, PLLC
                                                                          2445 M Street NW
                                                                          Suite 910
                                                                          Washington, DC  20037
                                                                          Tel: (202) 760-3160
                                                                          millerm@millerfriel.com
                                                                          frielb@millerfriel.com
                                                                          oneilw@millerfriel.com
                                                                          massarskyb@millerfriel.com

                                                                          and

                                                                          Clint A. Zalas
                                                                          LEE, GROVES AND ZALAS
                                                                          54931 30th Street
                                                                          South Bend, Indiana 46635
                                                                          Tel: (574) 232-5923
                                                                          cazalas@lgzlegal.com

                                                                          *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing Memorandum in Support of Plaintiff Indiana GRQ, LLC's Motion for Partial Summary Judgment Regarding the $30 Million Flood Sublimit, along with the Statement of Uncontested Facts, Declaration of William T. O'Neil, Esq. and accompanying exhibits, and proposed order were served electronically on the parties listed below this 8th day of July, 2022 via the Court's electronic filing system.

Peter E. Kanaris  
David E. Heiss  
Jennifer J. Kalas  
Brett Thomaston  
Hinshaw & Culbertson, LLP  
151 N. Franklin Street, Suite 2500  
Chicago, IL 60606  
dheiss@hinshawlaw.com  
pkanaris@hinshawlaw.com  
jkalas@hinshawlaw.com  
bthomaston@hinshawlaw.com  

Mitchell A. Orpett  
David E. Schroeder  
Tribler Orpett & Meyer, P.C.  
225 W. Washington St., Suite 2550  
Chicago, IL 60606  
maorpett@tribler.com  

*Attorneys for Defendants*

                                                          /s/ *Benjamin W. Massarsky*  
                                                          Benjamin W. Massarsky