**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF**
**INDIANA SOUTH BEND DIVISION**

| | | |
|---|---|---|
| INDIANA GRQ, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 3:21-cv-00227-DRL-MGG |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN GUARANTEE AND | ) | |
| LIABILITY INSURANCE COMPANY,  et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## AGREED AND UNAGREED JURY INSTRUCTIONS

The following comprise those jury instructions that have been agreed upon by Plaintiff Indiana GRQ, LLC ("IRG") and Defendant Insurers, as well as those jury instructions that have been proposed but not agreed to by one or several of the parties.

## I.    AGREED JURY INSTRUCTIONS

### 1.

An Agent acts within the scope of his express or implied authority when:

(1) the agent handles business the principal has specifically authorized; or
(2) the agents handles business based on words used, customs, relations of the parties, words, conduct, or acquiescence when completing what is necessary or incidental to express or implied authority.

*1 Indiana Model Civil Jury Instructions § 3513; Koval v. Simon Telelect, Inc., 693 N.E.2d 1299, 1302 (Ind. 1998).*

### 2.

The parties have stipulated, or agreed, that certain facts are true. You must treat these facts as having been proven for the purposes of this case:

1

- At all relevant times, Indiana GRQ, LLC ("IRG") owned a manufacturing facility at 701 West Chippewa Avenue in South Bend, Indiana (the "Facility").

- The Facility occupies approximately 1 million square feet.

- IRG Realty Advisors, LLC manages the Facility.

- Defendant Insurance Companies are American Guarantee and Liability Insurance Company ("American Guarantee"), Interstate Fire & Casualty Company ("Interstate"), Starr Surplus Lines Insurance Company ("Starr"), Chubb Custom Insurance Company ("Chubb"), General Security Indemnity Company of Arizona ("General Security"), Axis Surplus Insurance Company ("Axis"), and Ironshore Specialty Insurance Company ("Ironshore").

- Interstate issued a separate policy to plaintiff, for the 2016-2017 policy year, accepting 10% of the risk, or a limit of $3 million (the "Interstate Policy").

- The loss occurred on August 15-16, 2016 when 7.69 inches of rain which fell in an eight to twelve hour period caused flooding that impacted among other things, the South Bend Location.

- As a result, the loss investigation was originally coordinated by claims professionals from American Guarantee including American Guarantee's National General Adjuster Shawn Keating.

- Representatives of DeHayes also met with representatives of the insurance team during the pendency of the claim.

- At the time of the loss, IRG had eleven electrical transformers in six substations below grade at the Facility.

*Seventh Circuit Civil Jury Instruction 2.05 (2017).*

<u>3.</u>

The terms in the previous Instruction on punitive damages may have the following meanings:

"Gross negligence" is a voluntary act done with reckless disregard of the consequences to another person or entity.

"Wanton or willful" misconduct is an intentional act done with reckless disregard of probable injury to a person or entity, when a defendant knew of that probability and had the opportunity to avoid the risk.

"Malice" is an act done:

    1.      Intentionally;
    2.      Without legal authority or excuse; and
    3.      With the intent to injure.

"Fraud" is an act done knowingly or intentionally to cheat or deceive another person or entity.

"Oppressiveness" is an act done in a domineering, overbearing or controlling manner that subjects another person or entity to a cruel and unjust hardship.

*1 Ind. Model Civ. Jury Inst. 739 (2022)*

## II.    UNAGREED JURY INSTRUCTIONS

### a.  <u>Unagreed Jury Instructions Proposed by IRG</u>

<u>1.</u>

A principal is one who authorizes another to act on its behalf, subject to the principal's control. The authorized person or entity is called an agent.

*1 Indiana Model Civil Jury Instructions § 3507.*

<u>3.</u>

In addition to express and implied authority, an agent may also have apparent authority. "Apparent" means apparent to a third person, that is, someone other than the principal or the agent.

An agent has apparent authority when the principal places the agent in a position to act on behalf of the principal, and a third person reasonably believes that the principal authorized the agent to act.

If the third person reasonably relies on the agent's apparent authority, the principal is liable to the third person, even if the agent exceeded the authority given to [him][her][it] by the principal.

If, however, the third person knows, or by using reasonable care should have known, that the agent exceeded [his][her][its] authority, the principal is not liable for the agent's actions.

Reasonable care means being careful and using good judgment and common sense.

*1 Indiana Model Civil Jury Instructions § 3517.*

## 4.

Knowledge of Defendant's agent or employee acquired within the scope employment is knowledge of Defendant, regardless of whether the agent or employee shared their knowledge with anyone else.

*1 Indiana Model Civil Jury Instructions § 3529; see also Southport Little League v. Vaughan, 734 N.E.2d 261, 275 (Ind. Ct. App. 2000).*

## 5.

If the jury finds that Bob West (an insurance company consultant) was an agent of the Insurance Companies at all times relevant to this lawsuit, and:

If, within the scope of his authority, Bob West wrongfully acted or failed to act, the Insurance Companies are liable for that action or inaction.

*1 Indiana Model Civil Jury Instructions § 3521 (modified).*

## 6.

If the jury finds that Jeff Pope (an environmental consultant at Burns & McDonnell) was an agent of the Insurance Companies at any time relevant to this lawsuit, and:

If, within the scope of his authority, Jeff Pope wrongfully acted or failed to act, the Insurance Companies are liable for that action or inaction.

*1 Indiana Model Civil Jury Instructions § 3521 (modified).*

## 7.

If the jury finds that Micah Thoman (an insurance company adjuster at McLarens and later Charles Taylor) was an agent of the Insurance Companies at all times relevant to this lawsuit, and:

If, within the scope of his authority, Micah Thoman wrongfully acted or failed to act, the Insurance Companies are liable for that action or inaction.

*1 Indiana Model Civil Jury Instructions § 3521 (modified).*

## 8.

If the jury finds that Stuart Stromeyer (an insurance company adjuster at McLarens) was an agent of the Insurance Companies at all times relevant to this lawsuit, and:

If, within the scope of his authority, Stuart Stromeyer wrongfully acted or failed to act, the Insurance Companies are liable for that action or inaction.

*1 Indiana Model Civil Jury Instructions § 3521 (modified).*

<u>9.</u>

If the jury finds that Keith Hargan (an employee at Interstate) was an agent of Interstate at all times relevant to this lawsuit, and:

If, within the scope of his authority, Keith Hargan wrongfully acted or failed to act, Interstate is liable for that action or inaction.

*1 Indiana Model Civil Jury Instructions § 3521 (modified).*

<u>10.</u>

If the jury finds that Shawn Keating (a former employee at Zurich) was an agent of Zurich at all times relevant to this lawsuit, and:

If, within the scope of his authority, Shawn Keating wrongfully acted or failed to act, Zurich is liable for that action or inaction.

*1 Indiana Model Civil Jury Instructions § 3521 (modified).*

<u>11.</u>

For the purposes of liability and damages, unless you believe a certain Insurance Company acted independently from the other Insurance Companies, all findings of liability and awards of damages by the jury will be assessed against the Insurance Companies collectively, subject to their respective shares of risk under the policies as set forth in Stipulation Nos. XX in Jury Instruction No. 13 below.

<u>13.</u>

If you find that IRG started rebuilding, repairing, or restoring any of the electrical equipment that was damaged in the flood within two years of the flood, then IRG is entitled to recover the full replacement cost of the damaged electrical equipment in an amount to be determined by you. You may not depreciate the value of any damaged electrical equipment.

*March 23 Ruling, ECF 128 at 18-19.*

<u>14.</u>

If you find that the Insurance Companies did one or more of the following after August 15, 2017, you may find the policies' one year suit limitation clause is unenforceable: (1) participated in meetings with IRG regarding the claim, (2) worked with IRG and Insurance Company

consultants regarding environmental cleanup at the Facility, (3) made payments to IRG on the claim, or (4) took any other actions inconsistent with requiring IRG to file a lawsuit before August 15, 2017. [subject to court's ruling]

<u>15.</u>

To succeed in its breach of contract claim in this case, IRG must prove all of the following by a preponderance of the evidence:

(1) The Insurance Companies failed to perform their part of the contract;

(2) the Insurance Companies' breach of contract damaged IRG;

(3) The parties reasonably anticipated these damages when they entered into the contract; and

(4) The Insurance Companies' breach of contract was a responsible cause of these damages.

If you find that IRG has proven each of these things by a preponderance of the evidence, you should turn to the issue of IRG's damages.

*1 Indiana Model Civil Jury Instructions §§ 3307; 3307 (2020); Seventh Circuit Civil Jury Instructions 1.31 (2017 (modified); see also Strodtman v. Integrity Builders, Inc., 668 N.E.2d 279 (Ind. Ct. App. 1996).*

<u>16.</u>

If you decide that the Insurance Companies have breached the insurance contracts, the measure of IRG's damages is the amount that would put IRG in the same position it would have been in had the contract been fulfilled.

*1 Indiana Model Civil Jury Instructions § 3313 (2020).*

<u>17.</u>

You have discretion to consider inflation in awarding damages.

*1 Indiana Model Civil Jury Instructions § 711 (modified).*

<u>18.</u>

The Insurance Companies have an obligation of good faith and fair dealing in how they treat IRG. The Insurance Companies breach this obligation if they: (1) make an unfounded refusal to pay policy proceeds; (2) cause an unfounded delay in making payment; or (3) deceive the insured. By breaching the obligation of good faith and fair dealing, the Insurance Companies act in bad faith.

If you find by a preponderance of evidence that the Insurance Companies acted in bad faith, IRG is entitled to the following additional compensatory damages to put IRG in the same position it would have been had the Insurance Companies acted in good faith:

1) IRG's attorneys fees;
2) Court fees;
3) Expenses incurred by IRG to prosecute its case through trial, including expert fees and travel costs.

In a separate proceeding after the trial, as the Judge, I will determine the proper amount of such additional compensatory damages to which IRG is entitled as a result of the Insurance Companies' failure to act in good faith.

*Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 519 (Ind. 1993); Patel v. United Fire & Cas. Co., 80 F. Supp. 2d 948, 959 (N.D. Ind. 2000); Ind. Code Ann. § 34-52-1-1 (West)*

### 19.

You may find that the Insurance Companies acted in bad faith regardless of whether you find they breached their insurance contracts with IRG. These are separate and independent causes of action.

*Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 977 (Ind. 2005); Klepper v. ACE Am. Ins. Co., 999 N.E.2d 86, 98-99 (Ind. Ct. App. 2013)*

### 20.

If you decide that the Insurance Companies acted in bad faith, in addition to compensatory damages of attorneys' fees and costs, you may also award punitive damages.

Punitive damages should be awarded if you decide that IRG proved by clear and convincing evidence that either:

(1) The Insurance Companies' actions amounted to willful and wanton misconduct; OR

(2) the Insurance Companies acted either:

    a.  maliciously;

    b.  fraudulently;

    c.  oppressively; OR

    d.  with gross negligence,

AND

the Insurance Companies' acts were not the result of any of the following:

a. mistake of fact;

b. an honest error of judgment;

c. overzealousness;

d. ordinary negligence; OR

e. other human failing.

When I say that a particular party must prove something by "clear and convincing evidence" this means: when you have considered all of the evidence, you are convinced that it is highly probable that it is true.

If you award punitive damages, you must state the amount of those damages on the verdict form separately from the amount of compensatory damages.

*1 Indiana Model Civil Jury Instructions § 737 (2020) (modified); Seventh Circuit Civil Jury Instructions 7th Cir. Pattern No. 1.28 (2017) (modified).*

<u>21.</u>

If you decide to award punitive damages against the Insurance Companies, you should award that amount that you believe will serve to punish the Insurance Companies and to deter them and others from like conduct in the future.

*Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 520 (Ind. 1993); Indiana Model Civil Jury Instructions § 741.*

**b. <u>Unagreed Jury Instructions Proposed by Certain Insurers</u>[1]**

<u>1.</u>

ISSUES FOR TRIAL/PARTIES' BURDENS:

The plaintiff, Industrial Realty Group, LLC ("IRG"), has brought this lawsuit against the defendants, American Guarantee and Liability Insurance Company, Axis Surplus Insurance Company, Chubb Custom Insurance Company, General Security Indemnity Company of Arizona, Interstate Fire & Casualty Company, Ironshore Specialty Insurance Company and Starr Surplus Line Insurance Company (collectively referred to as the "Insurers"). The Insurers participated, severally and not jointly, on a quota share basis for the April 15, 2016 to April 15, 2017 property

---

[1] "Certain Insurers" are Defendants American Guarantee and Liability Insurance Company, Starr Surplus Lines Insurance Company, Chubb Custom Insurance Company, General Security Indemnity Company of Arizona, Axis Surplus Insurance Company, and Ironshore Specialty Insurance Company

insurance program of IRG. Each of the defendants issued separate contracts of property insurance to IRG for their percentage participation.

On August 15, 2016, a heavy rainstorm flooded a commercial tenant warehouse facility owned by IRG, which originally was a manufacturing site for Studebaker vehicles and jet engines during World War II. IRG claims that the Insurers breached their contracts of insurance by failing to pay for all of the alleged physical loss or damage to property caused by the flood. At the time of the flood, IRG had eleven electrical transformers and six substations. IRG contends that the flood damaged certain transformers causing the release of chemical compounds called polychlorinated biphenyls (PCBs) into the flood water. IRG removed all six substations, replaced a transformer and chose to relocate only one substation. IRG also performed certain environmental remediation. The Insurers paid IRG $2,682,315.13. While IRG has replaced one transformer and relocated one substation, it claims that the Insurers must pay the costs for the other ten electrical transformers and five substations. IRG also claims increased costs for environmental remediation in order to comply with the Toxic Substances Control Act ("TSCA"). IRG claims that it has performed all of its obligations under the contracts of insurance or that certain obligations were waived by the Insurers. IRG has the burden of proving these claims by a preponderance of the evidence.

IRG also claims that the Insurers breached their duty of good faith. IRG claims that the Insurers did not respond with a rational and principal basis for withholding certain cost estimates and further claims that the Insurers hired a former consultant of IRG to address the environmental remediation. IRG claims that the alleged conduct of the Insurers in these two instances entitles it to an award of punitive damages. IRG has the burden to prove these claims by clear and convincing evidence.

The Insurers deny that they have breached their contracts of insurance. The property insurance contracts required IRG to repair, rebuild or replace the damaged substations and transformers with materials of like kind, quality and capacity at the same or another site in order to recover replacement cost. Since IRG did not replace all of the substations and transformers, the property insurance contracts limit coverage to the necessary cost actually expended in repairing, rebuilding or replacing the substations and transformers.

As to the PCBs' environmental remediation, the Insurers deny that the eleven electrical transformers and six substations contained PCB oil, which was removed well-before the August 15, 2016 rainstorm. The Insurers deny that flood caused the release or discharge of PCBS from the eleven electrical transformers and six substations. The Insurers further claim that the United States Environmental Protection Agency has not required IRG to comply with TSCA and that TSCA does not apply. Further, the levels of PCBs found at the facility preexisted the April 15, 2016 effective date of coverage in the property insurance contracts. IRG has the burden of proving by a preponderance of the evidence that the levels of PCB found at the facility did not preexist the April 15, 2016 effective date of the insurance policies and instead that the flood caused physical loss or damage to the electrical equipment, resulting in the release or discharge of PCBs in or on the land or water.

The Insurers further deny that they have breached their duty of good faith and claim that they had a rational basis for the decisions made in retaining a former consultant of IRG and not providing certain estimates to IRG. The Insurers deny engaging in conduct which would warrant punitive damages. The Insurers have no burden to disprove the claims of IRG; as already stated, it is IRG who has the burden to prove each of these claims by clear and convincing evidence.

The Insurers have claimed certain defenses, including that IRG did not bring suit within the time period required under the property insurance contracts. It is undisputed that IRG did not perform all conditions required of it under the contract of insurance and bring suit within one year after the flood. Instead, IRG claims that the Insurers waived the suit limitation and/or are estopped from asserting the suit limitation. IRG has the burden of proving the waiver and/or estoppel of the suit limitation by a preponderance of the evidence.

The Insurers have also claimed as a defense that the property insurance policies do not cover land, water or any other substance in or on the land unless IRG can prove the actual not suspected presence of PCBs was caused by the flood. IRG has a burden to prove by a preponderance of the evidence that the flood caused the actual presence of PCBs, resulting in direct physical loss or damage to land and water.

Defendant Interstate Fire & Casualty Company has an exclusion in its policy for claims involving the removal of PCBs from structures.  Interstate contends that IRG's environmental cleanup claim is mainly is not exclusively for the removal of PCBs from the porous concrete in the basement, sub-basement and tunnels of the IRG facility.  Interstate claims that the PCB exclusion in its policy bars IRG's environmental claim from coverage under the Interstate policy.

<u>2.</u>

During the trial, certain testimony was presented to you by reading depositions and/or viewing video of deposition testimony. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

*Seventh Circuit Pattern Civil Jury Instructions  No.  ___*

<u>3.</u>

You may consider statements given by witnesses under oath before trial as evidence of the truth of what they said in the earlier statements, as well as in deciding what weight to give their testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial one of these witnesses made a statement which was not under oath that is inconsistent with their testimony here in court, you may consider the earlier statement or conduct only in deciding whether their testimony here in court was true and what weight to give to their testimony here in court.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  1.14 (modified pronouns)*

<u>4.</u>

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  1.17*

<u>5.</u>

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during the trial.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  1.18*

<u>6.</u>

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness' qualifications, and all of the other evidence in the case.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  1.21*

<u>7.</u>

Certain slides which have summarized facts or highlighted portions of documents, diagrams, charts and schedules have been shown to you as demonstrative exhibits. Those demonstrative exhibits are used for convenience and to help explain the facts of this case. They are not themselves evidence or proof of any facts.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  1.24*

<u>8.</u>

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean:  when you have considered all of the evidence, you are convinced that it is highly probable that it is true.

This is higher burden of proof than "more probably true than not true." Clear and convincing evidence must persuade you that it is highly probably true.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  1.28*

<u>9.</u>

Plaintiff, IRG, is a corporation. A corporation must act through its officers, employees or agents. Any act or omission of an officer, employee or agent of the Plaintiff acting within the scope of that person's authority is considered in law to be an act of IRG. Mr. Pikel and the DeHayes Group are agents of IRG and any act or omission by any one of them is considered in law to be an act of IRG.

*1.  I.P.G.I. No. 15-17 (modified)*
2. *McAdams v. Dorothy Edwards Realtors, Inc.*, 604 N.E.2d 607, 611 (Ind. 1992)
3. *Professional Adjusters Inc. v. Tandon*, 433 N.E.2d 779, 782 (Ind. 1982)

<u>10.</u>

The Insurers did not have an obligation to inform IRG of IRG's duties and responsibilities under the property insurance contracts and the law imposes a duty upon insureds to read their property insurance contracts, especially a sophisticated party like IRG.

*1. Opinion and Order of the Court filed March 23, 2023.*
2. *Auto-Owners Ins. Co. v. Hughes,* 943 N.E. 2d 432 (Ind. Ct. App. 2011)
3. *Summers v. Auto Owners Ins. Co.*, 719 N.E.2d 412, 416 (Ind. Ct. App. 1999)

<u>11.</u>

A person can wave his or her known right by voluntarily and intentionally giving it up. Mere silence is not waiver. In addition to an express waiver, the law recognizes that a waiver may be implied by acts or conduct of the parties, but only upon proof of a plaintiff's clear, unequivocal, and decisive act showing the waiver.

If IRG proves by the greater weight of the evidence that when the Insurers acted, they:

1.    Knew they had the right to assert one year contractual suit limitations;
2.    Fully understood that right; and
3.    Intentionally gave up that right,

then you should decide that the Insures waived that right.

*1. Ind. Model Civ. Jury Inst. 3339 (2022) (modified)*
2. *Union Federal Sav. Bank v. INB Banking Co. Southwest*, 582 N.E.2d 426 (Ind. Ct. App. 1991)
3. *Russell v. Trustees of Purdue Univ.*, 93 Ind. App. 242, 178 N.E. 180 (1931)

<u>12.</u>

Estoppel arises when a party intentionally makes statements or engages in conduct to mislead another party to do something that the other party would not have done but for such statements or conduct. In asserting a claim of estoppel, IRG must establish testifiable reliance on the statements of conduct of the Insurers. The doctrine of estoppel cannot however be used to create or expand coverage under an insurance policy which does not exist.

*1. Transcontinental Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277, 1280 (Ind. Ct. App. 1999)

<u>13.</u>

The contracts of insurance provide coverage to IRG for the risk of direct physical loss or damage to the insured property. In other words, the property for which IRG makes claim must have sustained direct physical loss or damage from a covered peril during the policy period. In order to maintain its breach of contract claim, IRG must establish by a preponderance of the evidence, that the physical loss or damage to the electrical equipment was caused by the flood. IRG must also establish by a preponderance of the evidence that the damage to the electrical equipment did not happen before April 15, 2016 or after April 15, 2017.

*1. Policy*
2. *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705 (Ind. Ct. App. 2004); *Town & Country Mut. Ins. Co. v. Sharp*, 538 N.E.2d 6, 9 (Ind. Ct. App. 1989); *St. Michael Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 496 N.E. 2d 1176, 1178-79 (Ill. App. Ct. 1986).

<u>14.</u>

The law requires IRG to mitigate its damages. By mitigating damages, I mean IRG must do what is necessary and reasonable to prevent further loss or damage. The obligation to mitigate damages also includes what is reasonable and necessary to prevent or limit any loss after the flooding event of August 15, 2016.

*1. Stewart v. City of Mount Vernon, 497 N.E.2d 939 (Ind. Ct. App. 1986)*
*2. Gallant Ins. Co. v. Toliver, 695 N.E.2d 592 (Ind. Ct. App. 1998)*

<u>15.</u>

The property insurance contracts issued by the Insurers do not cover land, water or any other substance in or on land unless IRG proves the actual, and not the suspected presence of PCBs in or on land at the facility, which was released, discharged or disbursed on August 16, 2016 as a result of direct physical loss or damaged caused by the flood to the transformers.

*1. Policy, Section III, 3.02.06 & Policy, Section V, 5.02.17*

<u>16.</u>

If you find that plaintiffs are entitled to recover insurance proceeds for the claimed damage to electrical equipment and environmental remediation of PCBs, then you must determine the amount recoverable as provided in the policies of insurance.

The policies of insurance provide in the event of loss, IRG may recover its cost to replace its property (without deduction for depreciation) computed as of the time of loss or damage. However, if IRG did not repair or replace the claimed damage, then IRG may only recover the actual cash value of the property.

If you determine that IRG did not replace all of the electrical equipment damaged by the flood, then you should determine the actual cash value of each electrical equipment item not replaced by calculating the value of the equipment at the time of loss or damage, taking into consideration its age, remaining useful life, physical condition, including deterioration and wear and tear suffered by the electrical equipment, physical depreciation and any and all factors and circumstances that one might consider in determining the value of the loss.

*1. Policy.*
*2. FSC Paper Corp. v. Sun Insurance Co. of New York, 744 F.2d 1279 (7th Cir. 1984)*
*3. Travelers Indemnity Co. v. Armstrong, 442 N.E.2d 349, 357 (Ind. 1982)*
*4. Weidman v. Erie Ins. Group, 745 N.E.2d 292 (Ind. Ct. App. 2001)*

<u>17.</u>

To prove bad faith, IRG must establish by clear and convincing evidence that there was no reasonable basis for the Insurers' decision to retain a former consultant and not to provide certain estimates to IRG. And that in making those decisions, either knew or recklessly failed to ascertain that additional amounts should have been paid under the contracts of property insurance. An insurance company has not acted in bad faith merely because its decision to deny additional coverage is incorrect. Indeed, an insurance company has the right to contest coverage in the amount of loss. Bad faith is more than bad judgment or even negligence. Bad faith requires conscious wrongdoing because of dishonest purpose or moral obliquity. Bad faith contemplates a state of mind operating with furtive design or ill will.

If you find that the Insurers knowingly had no rational, principled basis for their decisions with respect to the retention of a former consultant to IRG and had no rational, principled basis for withholding certain estimates so as to evince a conscious wrongdoing motivated by dishonest purpose, then the Insurers can be found to have exercised bad faith.

If, on the other hand, you find that the Insurers after investigating the facts and circumstances giving rise to the claims of plaintiff, reasonably concluded that the ability to retain the former consultant or not disclose certain estimates was debatable or questionable, then there is no bad faith.

*1. Erie Ins. Co. v. Hickman, 662 N.E.2d 515 (Ind. 1993)*
*2. Johnson v. State Farm Mut. Auto. Ins. Co., 667 N.E.2d 802, 805 (Ind. Ct. App. 1996)*
*3. Ansert v. Adams, 678 N.E.2d 839, 841 (Ind. 1997)*


<u>18.</u>

The non-breaching party may recover consequential damages in a breach of contract claim when that party's loss or damages flow naturally and probably from the breach, is the proximate consequence of the breach, and was contemplated by the parties at the time the contract was made. Recovery for consequential damages is generally limited to reasonably foreseeable economic losses.

*1. Indianapolis City Mkt. Corp. v. MAV, Inc,  915 N.E.2d 1013,  1024-25  (Ind. Ct. App. 2009)*
   *(citing Johnson v. Scandia Assocs., 717 N.E.2d 24 (Ind. 1999)).*
*2. Meridian Mut. Ins. Co. v. McMullen, 152 Ind. App. 141, 152-53, 282 N.E.2d 558, 565-66 (Ind. Ct. App. 1972)*

<u>19.</u>

If you decide that IRG is entitled to a recovery for the breach of contract and its claim of bad faith, then in addition, you may also award punitive damages.

Punitive damages may be awarded if you decide that IRG proved by clear and convincing evidence that either:

(1)    Insurers' actions amounted to willful and wanton misconduct; OR

(2)(A)  Insurers acted either:

      (a)  Maliciously;
      (b)  Fraudulently;
      (c)  Oppressively; OR
      (d)  With gross negligence;

      AND

  (B)  Insurers' acts were not the result of any of the following:

      (a)  Mistake of facts;
      (b)  An honest error of judgment;
      (c)  Overzealousness;
      (d)  Ordinary negligence; OR
      (e)  Other human failing.

*1. Ind. Model Civ. Jury Inst. 737 (2022)*

<u>21.</u>

If you decide to award punitive damages, you must determine the amount of money you believe will be adequate to:

(1)    Punish Insurers for what they did to IRG; and
(2)    Discourage Insurers and other insurance companies from similar acts in the future.

Further, in deciding the amount of punitive damages, you may consider:

(A)    The amount of actual or potential harm suffered by IRG as a result of the Insurers' conduct;
(B)    The amount of any Insurers' financial condition; and
(C)    The degree of reprehensibility of Insurers' conduct.

16

"Reprehensible" means worthy of severe blame.  In determining the degree of reprehensibility of the Insurers' conduct, you should consider the following:

- Was the harm caused physical as opposed to financial?
- Did the Insurers' conduct show a reckless disregard for the health or safety of others?
- Did Insurers' conduct involve repeated actions or was it an isolated incident?
- Was the harm the result of intentional malice, trickery or deceit as opposed to mere accident?
- Was the target of the Insurers' conduct financially vulnerable?

*1. Ind. Model Civ. Jury Inst. 741 (2022) (modified)*

### c. <u>Unagreed Jury Instructions Proposed by Interstate Fire & Casualty Company</u>

<u>1.</u>

## 1.03 ALL LITIGANTS EQUAL BEFORE THE LAW

In this case all of the parties are corporations and the defendants are also all insurance companies.  All parties are equal before the law.  Corporations and insurance companies are entitled to the same fair considerations that you would give any individual person.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  1.03 (modified)*

<u>2.</u>

## 1.25 MULTIPLE CLAIMS: MULTIPLE DEFENDANTS

You must give separate consideration to each claim and each party in this case.  Although there are seven defendant insurance companies, you have seen that six of them are represented by one counsel and one by another.  The fact that the defendants are represented by separate counsel should not be taken into account in your deliberations.   However, in considering a claim against a defendant, you must not consider evidence admitted only as to other defendants.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  1.25 (modified)*

<u>3.</u>

## 2.03 EVIDENCE ADMITTED ONLY AGAINST ONE PARTY

17

Some of the evidence in this case is limited to one of the parties and cannot be considered against the others.  Each party is entitled to have the case decided solely on the evidence which applies to that party.

Defendant Interstate Fire and Casualty Insurance Company contends that it has a PCB exclusion in its policy that is applicable to plaintiff's PCB cleanup claim.  Evidence related to this issue applies only to the dispute between plaintiff and Interstate and not to plaintiff's dispute with any other defendants.

*Source:  Seventh Circuit Pattern Civil Jury Instructions  No.  2.03 (modified)*

<u>4.</u>

**Burden of Proof On Insurance Coverage**

Plaintiff has the burden of proving that the coverage applies, and the insurers, if relying on an exclusion to deny coverage, have the burden of demonstrating that the exclusion is applicable.

*Source:  Cont'l Ins. Co. v. George J. Beemsterboer, Inc.*, 148 F. Supp. 3d 770, 780 (N.D. Ind. 2015), quoting *Bowman, Heintz, Boscia & Vician, P.C. v. Valiant Ins. Co.*, 35 F.Supp.3d 1015, 1023 (N.D.Ind.2014).

<u>5.</u>

**Instruction On PCB Exclusion**

If you find that the plaintiff has met its burden of proof that it is entitled to recover damages equal to the cost of cleaning up any environmental contamination at the South Bend Property due to the August 15, 2016 flood event, you must determine if those cleanup costs or any portion of those costs are excluded by defendant Interstate Fire & Casualty Company's policy.

The policy of insurance issued by Interstate Fire & Casualty Company contains the following exclusions clause and exclusion:

**24. EXCLUSIONS CLAUSE:**

[T]his insurance will not apply to any **Covered Loss** or any payments of any kind that may arise out of:

. . .

18

    C. <u>Asbestos, Dioxin or Polychlorinated Biphenols</u>

(1) Asbestos, dioxin or polychlorinated biphenols (hereinafter all referred to as "Materials") removal from any good, product or structure . . .

(2) Demolition or increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such Materials;

If you find that all or any of plaintiff's claimed environmental cleanup costs fit within the language of this exclusion, then you must find in favor of Interstate Fire & Casualty Company and against plaintiff with respect to those costs. If you find that all or any of those environmental cleanup costs do not fit within the language of this exclusion, then you must find in favor of plaintiff and against Interstate Fire & Casualty Company with respect to those costs. You will be provided with a verdict form on this issue at the end of these jury instructions.

<u>6.</u>

**Ex Gratia Payment**

An *ex gratia* payment is a payment made by an insurer on a claim that falls outside the scope of the policy, that is made for a reason other than the claim being covered, such as a business accommodation.

*Source:* *Luria Bros. & Co. v. All. Assur. Co.*, 780 F.2d 1082, 1085 (2d Cir. 1986); *McDermott v. Cont'l Ins. Co.*, 69 Ohio App. 3d 489, 497, 591 N.E.2d 251, 256 (1990).

Dated: April 17, 2023                Respectfully Submitted,

                                            */s/ Mark E. Miller*

                                            Mark E. Miller
                                            Brian G. Friel
                                            William T. O'Neil
                                            Benjamin W. Massarsky
                                            MILLER FRIEL, PLLC
                                            2445 M Street NW
                                            Suite 910
                                            Washington, DC  20037

19

Tel: (202) 760-3160
millerm@millerfriel.com
frielb@millerfriel.com
oneilw@millerfriel.com
massarskyb@millerfriel.com

Clint A. Zalas
LEE, GROVES AND ZALAS
54931 30th Street
South Bend, Indiana 46635
Tel: (574) 232-5923
cazalas@lgzlegal.com


*Attorneys for Plaintiff*


*/s/ David E. Heiss*
Peter E. Kanaris
David E. Heiss
Hinshaw & Culbertson, LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
dheiss@hinshawlaw.com
pkanaris@hinshawlaw.com


Jennifer J. Kalas
Hinshaw & Culbertson, LLP
322 Indianapolis Blvd.
Suite 201
Schererville, IN 46375
Tel: (219) 864-4521
Fax: (219) 864-5052
jkalas@hinshawlaw.com


*/s/ David E. Schroeder*
Mitchell A. Orpett
David E. Schroeder
Tribler Orpett & Meyer, P.C.
225 W. Washington St., Suite 2550
Chicago, IL 60606
maorpett@tribler.com


*Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing was served electronically on the parties listed below this 17th day of April 2023 via the Court's electronic filing system.

Peter E. Kanaris
David E. Heiss
Hinshaw & Culbertson, LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
dheiss@hinshawlaw.com
pkanaris@hinshawlaw.com

Jennifer J. Kalas
Hinshaw & Culbertson, LLP
322 Indianapolis Blvd.
Suite 201
Schererville, IN 46375
Tel: (219) 864-4521
Fax: (219) 864-5052
jkalas@hinshawlaw.com

Mitchell A. Orpett
David E. Schroeder
Tribler Orpett & Meyer, P.C.
225 W. Washington St., Suite 2550
Chicago, IL 60606
maorpett@tribler.com
deschroeder@tribler.com

*Attorneys for Defendants*

 /s/ *Benjamin W. Massarsky*
Benjamin W. Massarsky