IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| Indiana GRQ, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Cause No. 3:21-cv-00227-DRL-MGG |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN GUARANTEE AND | ) | |
| LIABILITY INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF INDIANA GRQ, LLC'S TRIAL BRIEF**

Plaintiff Indiana GRQ, LLC ("IRG") submits this trial brief in accordance with the Court's May 23, 2022 Order [ECF 86].

**1.    Case Overview**

IRG's South Bend Facility (the "Facility") is located at 701 West Chippewa Avenue in South Bend, Indiana. Among other things, the Facility manufactured Studebaker cars, Willies Jeeps and military vehicles. IRG purchased the Facility in the 1990s because it had an electrical infrastructure capable of supporting heavy manufacturing. When IRG purchased the Facility, it housed one military contractor that had historically manufactured at the Facility. It was IRG's plan to support this tenant's manufacturing operations, and given the Facility's unique electrical infrastructure, to attract future manufacturing tenants. The underground transformers — and their ability to deliver heavy manufacturing electrical capacity to the Facility — were, as one witness will testify, the "crown jewel" of the property.

On August 15-16, 2016, over 7.69 inches of torrential rain flooded the Facility. At the time, meteorologists characterized this event as a 100-year flood, a description reflecting both the rarity

1

and severity of the flooding in and around South Bend. IRG's property management team was on site immediately. One of their first acts was to disconnect the underground power system, because the eleven underground electrical transformers housed below the Facility were completely submerged in water. As is typical of heavy manufacturing facilities of the time, the transformers were filled with oil containing high levels of polychlorinated biphenyls ("PCBs"), a manmade chemical used in electrical transformers given their resistance to extreme temperatures and pressure, but one that is also heavily regulated as a toxic substance under the federal Toxic Substances Control Act ("TSCA").

The Facility suffered heavy damage as a result of the Flood, particularly in the below-grade tunnels, basement, and underground -vaults housing the electrical transformers. However, IRG purchased insurance in the event of such a calamity. The Facility was covered under insurance policies affording $30 million in flood coverage. Defendant Insurers each insured a certain percentage of that $30 million flood limit.[1] Soon after receiving notice, Defendant Insurers began working with IRG on its claim, paying for, among other things, PCB remediation and the partial replacement of electrical equipment. But as costs mounted, Defendant Insurers abruptly changed course. Rather than seeking to restore the Facility to its pre-flood state, Defendant Insurers instead sought to minimize their payments for PCB remediation and the replacement of damaged electrical equipment. In furtherance of this goal, Defendant Insurers, hid their true assessments of IRG's loss from IRG, fired IRG's contractors, and hired away IRG's own consultant to use against IRG.

---

[1] These include American Guarantee and Liability Insurance Company, Interstate Fire & Casualty Company, Starr Surplus Lines Insurance Company, Chubb Custom Insurance Company, General Security Indemnity Company of Arizona, Axis Surplus Insurance Company, and Ironshore Specialty Insurance Company (collectively the "Defendant Insurers").

Defendant Insurers ultimately paid just $2,682,315.13 of the $30 million limits provided by the policies, and initiated, in their own words, "early settlement" talks with IRG. Those discussions failed, and this litigation followed. IRG's position in this litigation is that Defendant Insurers should pay for the remaining environmental cleanup costs and the costs to replace damaged electrical equipment. Given their conduct, Defendant Insurers should also pay bad faith damages.

2. **Issues to be Tried**

   a. Did the Defendant Insurers breach their contracts of insurance by denying coverage for the full costs of replacing damaged electrical equipment at the Facility and by not fully remediating the PCB contamination at the Facility? Then, if so,

      i. What are IRG's damages from Defendant Insurers' breach of contract?

   b. Did Defendant Insurers act in bad faith by their actions in responding to IRG's claims for coverage? Then, if so,

      i. What are IRG's damages for Defendant Insurers' bad faith?

3. **Elements of the Claims**

   a. **Breach of Contract**

"To recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Morris v. Crain*, 71 N.E.3d 871 (Ind. Ct. App. 2017) (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)). The only one of these elements in dispute is the third element, damages.

There are two main components of IRG's damages: the replacement cost for electrical components in the basement of the Facility, and the costs to finish the remediation of PCB

contamination. Defendant Insurers have paid over $2.6 million on this claim and their payments include both categories of loss. They paid for partial remediation of PCB contamination found in tunnels and certain sub-vaults but refused to complete that cleanup. They also paid for the removal and disposal of all eleven transformers, but declined to pay for the entirety of the lost equipment. It is not disputed that the contract existed. It is not disputed that environmental cleanup of PCBs is covered because, among other reasons, Defendant Insurers have already paid for some PCB cleanup. The same holds true for electrical capacity loss suffered by the Facility. Defendant Insurers have already paid to replace some of it, but not all of it.

Accordingly, with respect to IRG's breach of contract claim, damages are the only element that needs to be proven. IRG's Rule 26 disclosures, as amended, set forth IRG's claimed damages, which exceed the $30 million flood limits under the policies.

### b. Bad Faith

Under Indiana law, an insurer has a duty to deal in good faith with its insured. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). "To prevail on a bad faith claim, [the insured] must prove the insurer (i) made an unfounded refusal to pay policy proceeds; (ii) caused an unfounded delay in making payment; (iii) deceived the insureds; or (iv) exercised an unfair advantage over the insured to pressure the insured into settling its claim." *Brandell v Secura Ins.*, 173 N.E.2d 279, 284 (Ind. Ct. App. 2021).

If IRG establishes that Defendant Insurers acted in bad faith by improperly refusing to pay or delay policy proceeds, deceiving IRG and/or unfairly pressuring IRG to settle its claim, IRG is entitled to compensatory damages – its attorneys' fees and costs associated with prosecuting this claim. Ind. Code Ann. § 34-52-1-1 (West); see *Patel v. United Fire & Cas. Co.,* 80 F. Supp. 2d 948, 963 (N.D. Ind. 2000) ("in the context of a bad faith insurance dispute, an insurer's denial of

4

coverage in bad faith may lead to a conclusion that the insurer litigated the action in bad faith, as that term is contemplated under § 34–52–1–1(b)(3)").

Punitive damages may be awarded if the insurer "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future.'" *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993) (quoting *Bud Wolf Chevrolet, Inc. v. Robertson*, Ind., 519 N.E.2d 135, 137–38 (1988)). If IRG further establishes that Defendant Insurers acted with "malice, fraud, gross negligence, or oppressiveness," IRG is entitled to punitive damages.

There is no dispute that a finding in support of punitive damages requires that IRG meets its burden of proof under the "clear and convincing" standard. *Hickman*, 622 N.E.2d at 520; *Michigan Mut. Ins. Co. v. Sports, Inc.*, 698 N.E.2d 834 (Ind. Ct. App.1998). However, with respect to the threshold finding of bad faith supporting an award of attorneys' fees and costs, a "preponderance of the evidence" standard applies. *Clifford v. State Farm Fire & Cas. Ins. Co.*, No. 3:10 CV 221, 2011 WL 2326969, at *13, n. 6 (N.D. Ind. June 7, 2011) (citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993); *Donald v. Liberty Mut. Ins. Co.*, 18 F.3d 474, 484 (7th Cir. 1994)). Given that an award of attorneys' fees and costs is compensatory in nature, it makes sense that the lower preponderance of the evidence standard applies.

As the Court determined in its March 23, 2023 Opinion and Order [ECF 128] ("March 23 Ruling"), a reasonable jury could find that Defendant Insurers acted in bad faith, at least with respect to Defendant Insurers' conduct of: (i) improperly withholding from IRG their cost

assessments of the loss and (ii) hiring IRG's remediation consultant to work against IRG. IRG will present documentary and testimonial evidence at trial to support both of these findings.

With respect to the Court's other comments in its March 23 Ruling regarding IRG's additional bad faith contentions, IRG intends to present documentary and testimonial evidence at trial to support the following two additional acts of bad faith by Defendant Insurers: (i) Defendant Insurers misrepresented their knowledge of PCB levels above 50 parts per million ("ppm") that would undisputedly trigger the more rigorous and expensive remediation standards under TSCA; and (ii) Defendant Insurers improperly pressured IRG to settle its claim early, knowing full well that the remediation costs under TSCA would far exceed any such proposed settlement. On these points some measure of clarification is appropriate. The information IRG provided in its September 9, 2022 Memorandum in Opposition to Defendant Insurers' Motion for Summary [ECF 119] ("Opposition Memorandum") was not meant to be exhaustive. By way of example, at trial IRG will introduce recent correspondence from the U.S. Environmental Protection Agency clearly indicating that additional remediation is required under TSCA thus contradicting the position by Defendant Insurers and their expert, Bob West, that TSCA does not apply. *See* **Exhibit E** to Plaintiff Indiana GRQ, LLC's Motion To Exclude Defendant Insurers' Expert Witnesses.

Likewise, the acts of Defendant Insurer bad faith identified by IRG in its Opposition Memorandum were also not meant to be exhaustive. IRG intends to present additional acts of Insurer bad faith at trial, which a reasonable jury could find violated their duty of good faith and fair dealing to IRG. For example, there is evidence clearly establishing that Defendant Insurers and their claims adjusters intentionally and repeatedly made efforts to falsely establish that the damage to IRG's Facility was not the result of the Flood.

**4.     Anticipated Testimony**

IRG will present witnesses to tell the timeline of events in a manner that is easy to understand and comprehend. The following witnesses are anticipated:

   a.  **Marcus McNeill – IRG Employee**

Mr. McNeill was first on the scene right after the flood, and he later escorted various representatives of Defendant Insurers around the Facility after the Flood. He has been a general maintenance employee at its Facility since IRG acquired the Facility in the mid-1990s. Mr. McNeill has knowledge of the flood at the Facility and the damage caused.

   b.  **Dan Wilson – Inserv**

Mr. Wilson runs a local environmental company known as Inserv. IRG hired Inserv immediately after the flood, and it was the only "on the scene" environmental contractor immediately after the Flood. Among other things, Mr. Wilson will testify about what he saw and did when he arrived on the scene and thereafter, including his observation of PCB oils released from the transformers.

   **Thomas Lovisa – Inserv**

Mr. Lovisa works with Dan Wilson. He managed portions of the PCB cleanup, and he personally measured PCB oil that escaped from the transformers as a result of the Flood.

   c.  **Steve Benson – Herrman & Goetz, Inc.**

Mr. Benson maintained some of the transformers in the sub-vaults. Among other things, he will testify that the transformers contained PCB fluid and that they were kept in pristine and working condition prior to the flood. He will also testify as to what electrical equipment was replaced and what was not.

### d. Adam Breden – Elite Electrical

Mr. Breden is IRG's onsite electrical contractor. Among other things, he will testify as to what electrical work was done by the Insurers, and what was not, as well as the importance of what was lost in the flood.

### e. Ken Kutchek, PE, CFEI – Robson Forensic

Mr. Kutchek is IRG's electrical expert. Among other things, he will testify about the electrical capacity of the plant prior to the flood, and thereafter.

### f. Ben Rosolowski – CPI Group

Mr. Rosolowski is an electrical contractor that was brought in by IRG to provide electrical costs to the Defendant Insurers when they were seeking an "early settlement" of the claim. Among other things, he will testify about the numbers he compiled which are outstanding costs associated with unfinished electrical work at the Facility.[2]

### g. Jeffrey Pikel - The DeHayes Group

Mr. Pikel is an insurance broker who worked for IRG. He was involved in meetings with Defendant Insurers' agents regarding adjustment of the claim. Among other things, he has knowledge of Defendant Insurers' investigation of IRG's claim, and payments made by the Defendant Insurers.

---

[2] Although Mr. Rosolowski prepared the costs he submitted based on what he would charge to do the work, like most contractors, he relied on bids from other sub-subcontractors. IRG believes that it would be a waste of the Jury and Court's time for each of these subcontractors to appear at trial in person merely to confirm their respective bids, but if Defendant Insurers object to Mr. Rosolowski's testimony, IRG is prepared to present for testimony the following persons: (1) Edwin Wickman – ABB, Ltd. (electrical costs); (2) Ian Ostrowski – Graybar (electrical costs); (3) Lacey R. Lord – Overhead Door Company (electrical costs); (4) Quentin Gudeman – Premier Power (electrical costs); and (5) Joseph W. Wallwork, - Nautilus Consulting (electrical costs).

### h. David Frangiamore – 2nd Insight, Inc.

Mr. Frangiamore is IRG's insurance industry expert. He will testify about insurance industry customs, practice, and norms, specifically as they relate to Defendant Insurers' claims handling and settlement practices.

### i. Mark Miley – Chief Operations Officer and Chief Financial Officer of IRG Realty Advisors, LLC

Among other things, Mr. Miley has knowledge of Defendant Insurers' actions in handling IRG's claim and the impact of Defendant Insurers' actions on IRG.

### j. Justin Lichter – Vice President, Industrial Realty Group, LLC

Among other things, Mr. Lichter has knowledge of Defendant Insurers' actions in handling IRG's claim and the impact of Defendant Insurers' actions on IRG. He also has knowledge of PCB contamination caused by the Flood.

In addition to these witnesses, IRG will prove its bad faith case against Defendant Insurers through various hostile witnesses. These include:

### a. Jeff Pope – Burns & McDonnell

Defendant Insurers recommended that IRG hire Mr. Pope to manage remediation of the site. IRG did so, but soon thereafter Mr. Pope began working for Defendant Insurers against the interests of IRG.

### b. Stuart Stromeyer – McLarens

Mr. Stromeyer is one of Defendant Insurers' adjusters who worked on IRG's claim. He has knowledge of Defendant Insurers' actions.

  c. **Micah Thoman – Charles Taylor**

Mr. Thoman, also one of Defendant Insurers' adjusters along with Mr. Stromeyer, jointly authored multiple reports to Defendant Insurers on IRG's claim. He has knowledge of Defendant Insurers' actions.

  d. **Shawn Keating – Zurich**

Mr. Keating handled this claim on behalf of Defendant Zurich. He has knowledge of Defendant Insurers' actions.

  e. **Keith Hargan – Interstate Fire & Casualty**

Mr. Hargan is expected to have knowledge of Interstate Fire & Casualty's claims handling decisions and actions regarding IRG's claim.

**5.** **Questions of Admissibility**

IRG is filing contemporaneously with this Trial Brief both In Limine and *Daubert* motions to limit the testimony on certain topics and by certain identified witnesses. In addition, pursuant to the Court's pre-trial scheduling order, IRG has raised a number of objections as to specific exhibits identified by Defendant Insurers.

**6.** **Other Legal Issues**

At the time of filing, the Parties are continuing to discuss proposed jury instruction and other pre-trial disclosures which may include legal issues upon which the Parties disagree. IRG reserves the right to identify such legal issues should agreement among the Parties not be reached.

|  |  |
|---|---|
| Dated: April 17, 2023 | */s/ Mark E. Miller* <br> Mark E. Miller <br> Brian G. Friel <br> William T. O'Neil <br> Benjamin W. Massarsky <br> MILLER FRIEL, PLLC <br> 2445 M Street NW <br> Suite 910 <br> Washington, DC  20037 <br> Tel: (202) 760-3160 <br> millerm@millerfriel.com <br> frielb@millerfriel.com <br> oneilw@millerfriel.com <br> massarskyb@millerfriel.com <br><br> and <br><br> Clint A. Zalas <br> LEE, GROVES AND ZALAS <br> 54931 30th Street <br> South Bend, Indiana 46635 <br> Tel: (574) 232-5923 <br> cazalas@lgzlegal.com <br><br> *Attorneys for Plaintiff* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served electronically on the parties listed below this 17th day of April 2023 via the Court's electronic filing system.

Peter E. Kanaris
David E. Heiss
Hinshaw & Culbertson, LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
dheiss@hinshawlaw.com
pkanaris@hinshawlaw.com

Jennifer J. Kalas
Hinshaw & Culbertson, LLP
322 Indianapolis Blvd.
Suite 201
Schererville, IN 46375
Tel: (219) 864-4521
Fax: (219) 864-5052
jkalas@hinshawlaw.com

Mitchell A. Orpett
David E. Schroeder
Tribler Orpett & Meyer, P.C.
225 W. Washington St., Suite 2550
Chicago, IL 60606
maorpett@tribler.com
deschroeder@tribler.com

*Attorneys for Defendants*

                                          /s/ *Benjamin W. Massarsky*
                                          Benjamin W. Massarsky