UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| INDIANA GRQ, LLC<br><br>    Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY *et al.*,<br><br>    Defendants. | CAUSE NO. 3:21-cv-227 DRL |

OPINION AND ORDER

The insurers seek to exclude testimony of Indiana GRQ, LLC's (IRG) opinion witness, David Frangiamore, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The court grants and denies the motion in pertinent part, limiting his testimony as outlined here.

STANDARD

A witness may testify in the form of an expert opinion when (1) the witness is "qualified as an expert by knowledge, skill, expertise, training, or education;" (2) the testimony is "based on sufficient facts or data;" (3) the testimony is "the product of reliable principles and methods;" and (4) the witness has "reliably applied the principles and methods to the facts of the case" in such a way that the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although analysis under Rule 702 remains at all times flexible, *Daubert*, 509 U.S. at 594, the fundamental considerations of what makes expert opinion admissible are well understood, *see Constructora Mi Casita, S de R.L. de C.V. v. NIBCO, Inc.*, 448 F. Supp.3d 965, 970-71 (N.D. Ind. 2020).

In short, the Federal Rules of Evidence strike a balance between two competing concerns: the apprehension for the free-for-all admission of unreliable theories that might baffle juries and a "stifling and repressive scientific orthodoxy" that might inhibit new truths or legitimate cases. *Daubert*, 509 U.S. at 596. While preserving that balance, the *Daubert* analysis is not a substitute for crossexamination,

contrary and compelling evidence, thoughtful jury instructions, and other methods inherent in federal trials to challenge shaky evidence. *Id.*; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

The court needn't conduct an evidentiary hearing here. No party has requested one. The briefing, proffered expert report, records from the claim's adjustment, exhibits, and deposition testimony also permit the court to rule. *See*, *e.g.*, *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998); *Target Mkt. Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n.3 (7th Cir. 1998).

DISCUSSION

The court recently ruled on summary judgment and reconsideration motions that provide the background for this case. *See Indiana GRQ, LLC v. Am. Guar. & Liab. Ins. Co.*, 2023 U.S. Dist. LEXIS 49026 (N.D. Ind. Mar. 23, 2023); *Indiana GRQ, LLC v. Am. Guar. & Liab. Ins. Co.*, 2023 U.S. Dist. LEXIS 74222 (N.D. Ind. Apr. 28, 2023). IRG retains two claims for trial—contract and bad faith.

David Frangiamore is an attorney with considerable experience handling insurance claims. He received his undergraduate degree from Union College in 1981 and his law degree from Golden Gate University in 1985. During and after law school he worked with the law firm Huster & Schneider. There he evaluated many insurance practices and negotiated claims with several insurance companies, including Farmers Insurance Company, USAA Insurance Company, CSAA Insurance Company, and CIGNA Insurance Company.

In 1991, Mr. Frangiamore joined Nationwide Mutual Insurance Company as a claims attorney. He handled several types of insurance claims, including, automobile, environmental, product defect, and personal injury. He joined the Wausau Insurance Company Environmental Claim Unit in 1993 as a claim supervisor, handling and supervising over 1,000 environmental and product liability claims. He has also trained insurance personnel and attorneys on claims handling practices.

2

Mr. Frangiamore's experience has yielded direct work with insurance companies, insurance brokers, and claims adjustors across the United States. He has written a book titled *How Insurance Companies Settle Cases*. He has testified at trial as an expert in more than a couple dozen cases. Today he is the president of 2nd Insight, Inc.—an insurance consulting firm that analyzes insurance coverage and claim handling issues.

IRG retained Mr. Frangiamore to determine whether the insurers complied with accepted insurance industry norms and practice and, if violated, whether that conduct amounted to bad faith. He proposes to opine as follows:

1. As a matter of insurance industry, custom, and practice, the insurers breached their contracts of insurance and their duty of good faith and fair dealing.
2. The insurers wrongfully withheld and unpaid legitimate due and owing cost for cleanup and repair of the Plant.
3. The insurers continue to misrepresent and conceal from its policyholder the true scope and obligation it has to IRG under the policies.
4. The insurers raised policy conditions after they had expired and without prior warning to IRG as to their existence or effect under the policies.
5. The insurers have unreasonably refused to recognize and correct their ongoing substandard claim handling practices in this matter.
6. The actions by the insurers outlined in Mr. Frangiamore's report are commonly referred to in the industry as "bad faith."

The insurers seek to exclude or limit Mr. Frangiamore's testimony on several grounds. The court addresses each objection in turn.

   A.   *Legal Opinions in Mr. Frangiamore's Testimony.*

The insurers first argue that Mr. Frangiamore offers inappropriate legal conclusions. "An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). For instance, "[e]xperts are permitted to testify regarding how their government agency applies rules as long as the testimony does not incorrectly state the law or opine on certain ultimate legal issues in the case." *United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006). But "Federal Rules of Evidence 702 and 704 prohibit

3

experts from offering opinions about legal issues that will determine the outcome of a case. . . . [Experts] cannot testify about legal issues on which the judge will instruct the jury." *United States v. Burge*, 711 F.3d 803, 813 n.5 (7th Cir. 2013).

The "line between admissible and inadmissible expert testimony as to the customs and practices of a particular industry often becomes blurred when the testimony concerns a party's compliance with customs and practices that implicate legal duties." *United States SEC v. ITT Educ. Servs.*, 311 F. Supp.3d 977, 985-86 (S.D. Ind. 2018) (quoting *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006)). "Federal courts routinely allow contract experts to testify regarding the meaning of contract terms when the meaning depends on trade practice." *Walmart Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1114 (8th Cir. 2020) (citing *WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994)).

The insurers request that six opinions in Mr. Frangiamore's report should be excluded because they reach legal issues—conclusions 1, 2, 3, and 6 (referenced above) and two additional opinions contained elsewhere in the report—namely, that the insurers violated well-established claims handling practices under the insurance code and applicable law, and that the insurers were obligated to disclose all factual policy bases for denying the claim. The insurers argue broadly that all six opinions are impermissible legal conclusions, though without citing any specific reasons why and thereby delivering at times undeveloped argument.

Not to be outdone, IRG offers no defense of these individual opinions one-by-one. Instead, IRG argues that Mr. Frangiamore said several times in his report and deposition that his opinions are not legal conclusions but what is accepted practice in the insurance industry specific to handling claims. IRG contends that any bad faith opinions refer to bad faith from the insurance industry's point of view, not legal bad faith. The court will address each opinion in turn.

First he intends to say, "[a]s a matter of insurance industry custom and practice, the Insurers breached their contracts of insurance and their duty of good faith and fair dealing" (opinion 1). As stated,

4

the opinion is improper. It is impossible to divorce from the applicable industry standard the legal conclusion that the insurers breached their contracts and duty of good faith and fair dealing. *See RAP Indy, LLC v. Zurich Am. Ins. Co.*, 2021 U.S. Dist. LEXIS 145861, 12 (S.D. Ind. Aug. 4, 2021) ("Using buzzwords like 'custom and practice of the industry' cannot save [this testimony] from consisting of legal conclusions."); *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993) (legal duty of good faith). These are topics on which the jury will be instructed. *See Burge*, 711 F.3d at 813 n.5. He may still speak to relevant insurance industry custom and practice to aid the jury in making this decision.

Second, he intends to say "[t]he Insurers wrongfully withheld and unpaid legitimate due and owing cost for cleanup and repair of the Plant" (opinion 2). This opinion is devoid of telling, or purporting to tell, the jury the law so long as Mr. Frangiamore opines that the "wrongdoing" was based on a perceived failure of compliance to industry standards or custom without delving into a disguised legal conclusion. The court presumes in this discussion that Mr. Frangiamore will offer this opinion vis-à-vis the policy (breach of contract) or alternatively the McLarens cost estimates issue (underlying the bad faith claim).

Third, he intends to say "[t]he Insurers continue[] to misrepresent and conceal from its policyholder the true scope and obligation it has to IRG under the policies" (opinion 3). This opinion is devoid of telling the jury the law, and instead aids the jury to understand the workings of a policy in a complicated scenario, again so long as this opinion arises from the application of industry practice that needs to be addressed in understanding either the policy (the contract) or IRG's bad faith claims that remain. *See Davis*, 71 F.3d at 789.

Fourth, he intends to say "[t]he actions by the Insurers outlined in [his] report are commonly referred to in the industry as 'bad faith'" (opinion 6). This is carefully worded to be sure—as to what the industry considers bad faith—but it strays too far into the lane of telling the jury what the law defines as bad faith, and an expert can no better assess subjective intent (improper motive or ill will) than the jury.

5

*See, e.g., Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, 2004 U.S. Dist. LEXIS 6938, 20-22 (N.D. Ill. Jan. 26, 2004). In addition, the issue the jury must decide is whether the insurers acted in bad faith under the law; and whether the industry colloquially calls their actions bad faith isn't the issue nor truly aids the jury in understanding the evidence or deciding the issue of consequence. *See* Fed. R. Evid. 702(a); *Daubert*, 509 U.S. at 591 (addressing helpfulness); *see also Perez v. K & B Transp. Inc.*, 967 F.3d 651, 656 (7th Cir. 2020) (court may raise expert admissibility *sua sponte*). The risk of undue prejudice and jury confusion likewise substantially outweigh any negligible probative value. *See* Fed. R. Evid. 403; *Daubert*, 509 U.S. at 595. The court excludes this opinion as stated accordingly.

Fifth, he plans to say the "Insurers violated many well-established claim handling practices, as well as many applicable requirements under the insurance code and regulations and applicable law." If Mr. Frangiamore testifies that the insurers violated insurance practices, he does not run afoul of Rule 704. But he may not testify that the insurers violated the law. The jury will decide that issue without his opinion. *See Burge*, 711 F.3d at 813 n.5.

Sixth, he plans to say "[u]nder insurance industry custom and practice the Insurers were obligated to disclose all factual policy bases for the denial of an insurance claim." This opinion isn't inappropriate legal conclusion. A scrutiny of the surrounding text reveals no application of law, only opinion on what is expected in the practice of insurance claims handling.

  B. *Testimony on Issues Excluded by the Court's Summary Judgment Ruling.*

The insurers next move to exclude testimony on several issues: the application of the $10 million special flood hazard area sublimit, their alleged effort to limit their liability retroactively to actual cash value and the two-year limit on the commencement of repair, as well as several bad faith issues. The insurers argue that the court resolved these issues on summary judgment, so opinions pertaining to them are no longer relevant or helpful. *See Daubert*, 509 U.S. at 591.

A court should exclude testimony unless it speaks, without confusing or misleading the jury, to a relevant issue that the jury must decide. *See* Fed. R. Evid. 403, 702; *see, e.g.*, *Hartman v. EBSCO Indus.*, 758 F.3d 810, 819 (7th Cir. 2014). To be helpful, an opinion must aid the jury to decide an issue of consequence. The court must determine whether an expert's "reasoning or methodology properly can be applied to the facts in issue," *Daubert*, 509 U.S. at 593, and whether the witness's knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a). Opinions must be tied to case facts and issues. *See Kumho Tire*, 526 U.S. at 150. This is what is commonly called fit. *See Daubert*, 509 U.S. at 591.

IRG argues these opinions are relevant to its bad faith claim. Two bad faith theories remain for trial, and only two: the withholding of loss cost assessments and the retention of Jeff Pope of Burns & McDonnell as a turncoat expert to pressure settlement. It is only through these two theories that IRG may present evidence of bad faith. Summary judgment left no other theories.

Mr. Frangiamore opines that the insurers acted in bad faith by seeking to limit their liability to actual cash value under the two-year limitation for starting repairs and replacements. He says the insurers were "lying in wait" for the two-year period to expire so they could retroactively spring this policy limitation on IRG. Mr. Frangiamore also opines that the first time the insurance companies began violating insurance custom and practice was when they asserted the $10 million sublimit. IRG argues that these opinions inform its bad faith claim and punitive damages.

Neither of these opinions bears on the turncoat expert. That said, Mr. Frangiamore's opinion about the $10 million sublimit fits the case to the extent that IRG seeks to use this testimony to demonstrate that there was no reasonable basis for the insurers to withhold the McLarens cost estimates. In primary thrust, that issue of contract has already been decided; but in secondary thrust, the jury must still decide the issue whether the insurers acted in bad faith in withholding the McLarens cost estimates, and in doing so the jury may consider evidence of industry custom, *see Valley Forge Ins. Co. v. Hartford Iron*

*& Metal, Inc.*, 2018 U.S. Dist. LEXIS 150478, 28-29 (N.D. Ind. Sept. 5, 2018), not least to decide whether the insurers acted with dishonest purpose, furtive design, or had any rational, principled basis for proceeding as they did, *see Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993); *Brandell v. Secura Ins.*, 173 N.E.3d 279, 284 (Ind. Ct. App. 2021), as well as the corollary issue of punitive damages. Certain McLarens cost estimates were above this sublimit and certain were not. The opinion cannot be that the mere assertion of the $10 million sublimit constituted bad faith, but that this sublimit was not a rational or principled basis for withholding the McLarens cost estimates.

The issue of actual cash value and the two-year time limit remains alive and well in the trial, but that issue remains for IRG's contract claim. IRG, which has the burden, has not demonstrated that it would intend to offer Mr. Frangiamore's opinion on this provision to prove its contract claim or to aid the jury in deciding this contract claim. The court might couch his opinion in a way that it might, but only in a way that would then invite this witness improperly to define for the jury the law (*e.g.*, waiver). In truth, his opinion concerns a bad faith claim that no longer exists today—that the insurers acted in bad faith by lying in wait for the two-year period to expire. This opinion no longer fits this case.

Next, the insurers say Mr. Frangiamore offers a number of opinions unrelated to IRG's two remaining bad faith theories. The insurers identify six different opinions and then ask for the exclusion of unidentified "other things" under the same reasoning. The court can't and won't exclude opinions as "among other things," nor will it make arguments for the insurers. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010). The six opinions follow:

- The insurers continued to misrepresent and conceal from its policyholder the true scope and obligation they have to IRG under the policies (opinion 3 above).
- The insurers raised policy conditions after they had expired and without prior warning to IRG as to their existence or effect under the policies (opinion 4 above).
- The insurers unreasonably refused to recognize and correct its ongoing substandard claim handling practices in this matter (opinion 5 above).
- The insurers misled IRG by not pointing out to its insured all the relevant coverages and benefits available to IRG as described in this report (new).

- Under insurance industry custom and practice, the insurers were obligated to disclose all factual policy bases for the denial of an insurance claim (new).
- The insurers do not have adequate practices and procedures in effect to make sure that undisputed payments are promptly paid and not improperly denied (new).

IRG defends by saying all these opinions will show that the insurers acted in "totality" in bad faith. There is no claim for the "totality" of bad faith outside the joint consideration of the two theories that remain. Expert testimony of other alleged instances of bad faith—unrelated to IRG's remaining theories—is not relevant or helpful, and it would confuse the jury and unnecessarily prolong the trial. *See* Fed. R. Evid. 403, 702; *see, e.g., Hartman*, 758 F.3d at 819; *Anderson v. Dept. of Veterans Affairs*, 2018 U.S. Dist. LEXIS 8487, 5 (N.D. Ind. Jan. 18, 2018); *see also Sims v. Mulcahy*, 902 F.2d 524, 531 (7th Cir. 1990) ("Exclusion of evidence under Rule 403 is . . . important to avoid significant litigation on issues that are collateral to those required to be tried.").

The court has already addressed the first bulleted opinion (opinion 3), and it continues to fit the case. There are only two timing provisions that the parties have raised—a one-year statute of limitation for suit and a two-year term related to actual cash value. To the extent the second bulleted opinion (opinion 4) relates to the first issue, it doesn't fit the case given the court's summary judgment ruling; and, to the extent this opinion bears on the latter timing provision, IRG has advanced this opinion today only in the context of bad faith, and that theory no longer fits. The court cannot say the third bulleted opinion (opinion 5) has no bearing on the contract or bad faith theories that remain, so it will not be excluded based on the argument the insurers make. The fourth bulleted opinion—that the insurers misled IRG—proves to be a bad faith opinion that no longer fits this case, given that it has no bearing on the withholding of the McLarens estimates. On the last two bulleted opinions, IRG had the burden to show their admissibility and has not met that burden. Perhaps the opinions could bear on the contract claim, but this witness builds these issues to opine ultimately that the insurers acted in bad faith; and IRG has

9

not preserved these particular bad faith theories for trial. Without a demonstrated fit, they must be excluded on this record. *See* Fed. R. Evid. 702(a).

      C.      *Testimony Concerning the Toxic Substances Control Act (TSCA) and Environmental Remediation.*

The insurers argue that Mr. Frangiamore should not be allowed to testify that the Toxic Substances Control Act (TSCA) applies to the environmental remediation issue. IRG responds that it has "no intention of presenting Mr. Frangiamore as an expert in TSCA and he will not opine at trial as to whether TSCA applies to the remediation of the South Bend Facility" [ECF 172 at 8]. As the parties seem to agree on this issue, the court expects the parties to abide by this agreement at trial. The court will echo its support for this agreement and underscore that it anticipates no opinions from Mr. Frangiamore about the need or scope of environmental remediation.

      D.      *Testimony Concerning IRG's Bad Faith Theory Relating to Jeff Pope.*

The insurers argue that Mr. Frangiamore should not be permitted to offer any expert opinion on the bad faith theory pertaining to Mr. Pope because Mr. Frangiamore has not referenced any opinion on that issue in either his report or his deposition. Rules 26 requires the disclosure of "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B)(i), (a)(2)(B)(ii)

"The purpose of [expert] reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion (along with the other background information required by Rule 26(a)(2)(B)) so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009). These disclosures "allow attorneys, not experts in the fields at issue, to prepare intelligently for trial and to solicit the views of other experts." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010).

IRG cites two lines from Mr. Frangiamore's report to support the inclusion of testimony on the Jeff Pope issue: "The Insurers continue[] to misrepresent and conceal from its policyholder the true scope

10

and obligation it has to IRG under the policies" and "The Insurers here flatly misrepresented coverage in an attempt to place their interests above the interests of IRG" [ECF 136-1 at 27-28]. IRG argues that the Jeff Pope matter falls under one of these opinions. But the record provides no basis to conclude that these two opinions are based on the insurers' dealings with Mr. Pope in either the expert report or his deposition. *See Kumho Tire*, 526 U.S. at 150. It is a stretch too far to say his opinions in any way touch on the subject of Jeff Pope. There will not be an ambush at trial of new opinion, and any such new opinion would not be substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1).

## CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the insurers' motion to exclude testimony by David Frangiamore [ECF 135] and LIMITS his testimony as outlined in this order. The court GRANTS the insurers' motion for leave to file [ECF 150].

SO ORDERED.

May 12, 2023                                          *s/ Damon R. Leichty*
                                                      Judge, United States District Court