UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| INDIANA GRQ, LLC<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY *et al.*,<br><br>Defendants. | CAUSE NO. 3:21-cv-227 DRL |

OPINION AND ORDER

Indiana GRQ, LLC (IRG) seeks to exclude testimony of the insurer's witness, Chaz Mello, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The court denies the motion.

STANDARD

A witness may testify in the form of an expert opinion when (1) the witness is "qualified as an expert by knowledge, skill, expertise, training, or education;" (2) the testimony is "based on sufficient facts or data;" (3) the testimony is "the product of reliable principles and methods;" and (4) the witness has "reliably applied the principles and methods to the facts of the case" in such a way that the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although analysis under Rule 702 remains at all times flexible, *Daubert*, 509 U.S. at 594, the fundamental considerations of what makes expert opinion admissible are well understood, *see Constructora Mi Casita, S de R.L. de C.V. v. NIBCO, Inc.*, 448 F. Supp.3d 965, 970-71 (N.D. Ind. 2020).

In short, the Federal Rules of Evidence strike a balance between two competing concerns: the apprehension for the free-for-all admission of unreliable theories that might baffle juries and a "stifling and repressive scientific orthodoxy" that might inhibit new truths or legitimate cases. *Daubert*, 509 U.S. at 596. While preserving that balance, the *Daubert* analysis is not a substitute for crossexamination,

contrary and compelling evidence, thoughtful jury instructions, and other methods inherent in federal trials to challenge shaky evidence. *Id.*; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

The court needn't conduct an evidentiary hearing here. No party has requested one. The briefing, proffered expert report, records from the claim's adjustment, exhibits, and deposition testimony also permit the court to rule. *See*, *e.g.*, *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998); *Target Mkt. Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n.3 (7th Cir. 1998).

## DISCUSSION

The court recently ruled on summary judgment and reconsideration motions that provide the background for this case. *See Indiana GRQ, LLC v. Am. Guar. & Liab. Ins. Co.*, 2023 U.S. Dist. LEXIS 49026 (N.D. Ind. Mar. 23, 2023); *Indiana GRQ, v. Am. Guar. & Liab. Ins. Co.*, 2023 U.S. Dist. LEXIS 74222 (N.D. Ind. Apr. 28, 2023). IRG retains two claims for trial—contract and bad faith.

IRG seeks to exclude Chaz Mello's proposed expert testimony. He is a building and claim measurement witness with fifteen years of experience in the property damage industry and seven additional years of experience in excavation before that. In his fifteen years at J.S. Held, he has held the positions of building consultant, vice president, regional manager, senior vice president, and U.S. operations manager. He is a member of the Chicago Building Congress and has certifications from the Institute of Inspection Cleaning and Restoration Certification (IICRC) in structural drying, fire restoration, and water restoration.

Mr. Mello offers opinions about the Studebaker Business Center—the building. His opinions appear in a joint report with Paul Christoferson, who separately addresses electrical issues. Mr. Mello intends to offer three conclusions. First, he is generally expected to testify that J.S. Held reviewed submitted scopes and costs as received and continuously provided updated recommendations in efforts

to keep IRG, McLarens Claims Services, and J.S. Held on the same page. IRG says that this point is factual in nature and not expert opinion, and IRG is correct. *See* Fed. R. Evid. 602, 701. Second, Mr. Mello is expected to testify that J.S. Held attended the loss site nine times in total. This seems in no way born of specialized, technical, or scientific knowledge, but instead fact testimony.

The battlelines, if any, really materialize over a cost analysis schedule (Schedule 1.0) dated June 22, 2018, which includes various itemized building related costs. This schedule has two sections. The left section (labeled "As Submitted") lists invoices, estimates, and bids, including dates, vendors, description, and total cost for each. The right section (labeled "As Reviewed by J.S. Held LLC") includes columns to indicate how much of the total cost from each document was categorized as non-hazardous and hazardous, a column for the insured's total for each document, and a column for comments including whether the document was fair.

IRG argues that the schedule is just a summary of the cost data Mr. Mello was provided. Mr. Mello admits that the "As Submitted" section and the "Insured's Total" column in the "As Reviewed" section merely compiled information given to him, so he was not performing on this record an expert task, nor would he be using specialized, technical, or scientific knowledge to assist the trier of fact to understand the evidence or decide an issue of consequence. He is a fact witness to this extent.

His report classifies as "opinion" certain categories of dollar figures that originate from his cost analysis schedule. The report is broken down into parts. Part A discusses "Agreed recommendations for 'Non-Hazardous' total $1,386,470.17." Part B discusses "Agreed recommendations for 'Hazardous' total $2,341.010.98." For each document included in the schedule, it categorizes a certain amount of the document total as non-hazardous and hazardous. Though challenged, the insurers leave the nature of any anticipated opinions about these numbers unexplained, and the court is left to wonder what each category means, who made these assessments, and on what basis they were made.

3

Mr. Mello's deposition testimony seems to establish that he didn't make the decisions behind the numbers. When asked about the purpose of the breakdown between non-hazardous and hazardous, for instance, he said, "McLarens asked us to create those specific buckets, if you will, for their purposes." When pressed further about whether J.S. Held was the decisionmaker for the categorization of costs as non-hazardous or hazardous, Mr. Mello responded "I believe so, on a certain level. I would say it was probably a team effort, in some effects, you know, running something by Bob West or, you know, if we have – if we didn't exactly know."

In a different portion of the deposition, Mr. Mello was asked about the effect of the hazardous label using line 18 of the spreadsheet as an example:

> Q. Okay. So of the – the total invoice, then, is $85,000?
> A. Yes.
> Q. And hazardous is labeled $70,000. Does that mean that $15,000 was deemed not payable?
> A. I'd have to ask McLarens what the percentage – what the percentages were and why.
> Q. So McLarens provided you with that percentage that was –
> A. Well, yeah. For the buckets with percentages, that would be from McLarens.

The insurers haven't shown that Mr. Mello made the non-hazardous and hazardous categorizations or on what basis or method he would have done so. The closest Mr. Mello comes in the deposition is testifying that he "[doesn't] recall specifically, but [he] may have" used the distinction of costs between non-hazardous and hazardous on other projects.[1] The insurers have not satisfied their burden to show that the non-hazardous and hazardous categorizations should be offered as expert testimony. They might constitute factual testimony, but the admissibility of that testimony remains for trial, not today. With the

---

[1] In discussing a different spreadsheet (the Rough Order of Magnitude), the insurers say that Mr. Mello's "testimony established how and on what basis the costs were categorized. Exhibit F, pp. 40-22." [ECF 157 at 12]. To the extent that this is actually a reference to the Schedule 1.0 spreadsheet and the categories referenced are hazardous and non-hazardous, Mr. Mello's deposition testimony doesn't explain that he made these categorizations or on what basis they were made. The court can't track the citation the insurers provided and finds no explanation in Mr. Mello's deposition on its own.

4

Interstate pollution exclusion still a live issue, the court cannot say today that this categorization on its face is irrelevant.

Part C of the opinion states "Agreed recommendations for 'Insured Total' total $260,112.33." Mr. Mello admits that the "Insured's Total" column of the schedule was simply information given to him. For Part C, the insurers haven't shown that the insured total figures are testimony based specialized, technical, or scientific knowledge that will be offered to assist the trier of fact.

The remaining portions of Mr. Mello's testimony all seem to relate to the difference column of the claim-tracking schedule: "(d) Agreed Differences: $122,506.34; (e) Differences for Non-Loss Related Scopes of Work: $79,435.32; (f) Current Differences Requiring Clarification: $86,899.98; (g) Current Differences for Work Not Performed: $1,175.553.36." In explaining what the difference column in the schedule captures, Mr. Mello says it is the difference between what an invoice said and what he agreed was payable. When the comments column says "fair and reasonable," the differences column is blank. Mr. Mello testified that these fair and reasonable judgments came from J.S. Held—building related from him and electrical related from Paul Christoferson—perhaps at times with input from McLarens.

Mr. Mello says that he "didn't undertake any new analysis to come up with" the agreed difference in the report and says "these are the numbers present in that schedule." Adding all the figures from Parts D through G gets the total of the difference column ($1,464,395), but the court cannot divine how or on what basis Mr. Mello generated these itemized difference figures. The report leaves that unexplained. The insurers leave that unexplained.

Expert testimony must originate from reliable principles and methods. Fed. R. Evid. 702(c). This is not limited to scientific testimony for Rule 702 also applies to technical or other specialized knowledge. *Daubert*, 509 U.S. at 589-90 n.8. To the extent that Mr. Mello merely was compiling information or doing basic math, he is not offering expert-based opinion. His assessments of costs as "fair and reasonable," or

5

not, may be based on specialized knowledge, but IRG has not challenged these opinions, if in truth expert-based opinions at all. *See* Fed. R. Evid. 701-702.

Within the numbers and categories themselves, the insurers seem to think that there is something expert-based in them. If so, they have not specified what that is, nor have they demonstrated the method that Mr. Mello followed, outside of merely compiling numbers. "An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable. Someone else using the same data and methods must be able to replicate the result." *Zenith Electr. Corp. v. WH-TV Broadcast. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Mr. Mello hasn't explained his approach nor shown that it produces an accurate estimate using professional methods. "[E]xperts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Electric v. Joiner*, 522 U.S. 136, 146 (1997). But IRG makes this point only in arguing that these really aren't expert opinions, and otherwise just argues their irrelevance. The court may agree that the insurers have not demonstrated something "expert" here, but the court disagrees that the schedule or anticipated testimony about it would be in all respects irrelevant on this preliminary record.

The insurers focus most of their briefing, not on Mr. Mello's deposition or Schedule 1.0, but instead on a different document, the Preliminary Rough Order of Magnitude (ROM). The ROM lists vendors (or areas of projects), a draft preliminary budget for each, and a preliminary repair budget for each along with a total. In his deposition, Mr. Mello says that he developed the repair budget numbers in the ROM save for those in line 7 (electrical substations), which Mr. Christoferson provided. IRG has not challenged any opinion within the ROM in argument.

This motion strikes as one that would have benefitted greatly from the parties conferring. Mr. Mello seems a split witness—one who will offer factual and potentially expert testimony. The court will require the demarcation of any such testimony during trial. But, on this record, the court cannot say Mr.

6

Mello's testimony is irrelevant as to the hazardous or non-hazardous categorizations; and, though the court may agree that certain testimony will not be expert-based, his other designated opinions in his report may be, and they remain unchallenged by IRG.

## CONCLUSION

Accordingly, the court DENIES Indiana GRQ, LLC's (IRG) motion to exclude testimony from Chaz Mello [ECF 146].

SO ORDERED.

May 12, 2023

*s/ Damon R. Leichty*
Judge, United States District Court