UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| INDIANA GRQ, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY *et al.*, <br><br> Defendants. | CAUSE NO. 3:21-cv-227 DRL |

OPINION AND ORDER

Indiana GRQ, LLC (IRG) seeks to exclude testimony of the insurer's opinion witness, Paul Christoferson, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). The court denies the motion.

STANDARD

A witness may testify in the form of an expert opinion when (1) the witness is "qualified as an expert by knowledge, skill, expertise, training, or education;" (2) the testimony is "based on sufficient facts or data;" (3) the testimony is "the product of reliable principles and methods;" and (4) the witness has "reliably applied the principles and methods to the facts of the case" in such a way that the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Although analysis under Rule 702 remains at all times flexible, *Daubert*, 509 U.S. at 594, the fundamental considerations of what makes expert opinion admissible are well understood, *see Constructora Mi Casita, S de R.L. de C.V. v. NIBCO, Inc.*, 448 F. Supp.3d 965, 970-71 (N.D. Ind. 2020).

In short, the Federal Rules of Evidence strike a balance between two competing concerns: the apprehension for the free-for-all admission of unreliable theories that might baffle juries and a "stifling and repressive scientific orthodoxy" that might inhibit new truths or legitimate cases. *Daubert*, 509 U.S. at 596. While preserving that balance, the *Daubert* analysis is not a substitute for crossexamination,

contrary and compelling evidence, thoughtful jury instructions, and other methods inherent in federal trials to challenge shaky evidence. *Id.*; *see also Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013). The proponent of expert testimony must establish its admissibility by a preponderance of the evidence. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019).

The court needn't conduct an evidentiary hearing here. No party has requested one. The briefing, proffered expert report, records from the claim's adjustment, exhibits, and deposition testimony also permit the court to rule. *See*, *e.g.*, *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998); *Target Mkt. Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1143 n.3 (7th Cir. 1998).

DISCUSSION

The court recently ruled on summary judgment and reconsideration motions that provide the background for this case. *See Indiana GRQ, LLC v. Am. Guar. & Liab. Ins. Co.*, 2023 U.S. Dist. LEXIS 49026 (N.D. Ind. Mar. 23, 2023); *Indiana GRQ, v. Am. Guar. & Liab. Ins. Co.*, 2023 U.S. Dist. LEXIS 74222 (N.D. Ind. Apr. 28, 2023). IRG retains two claims for trial—contract and bad faith.

IRG seeks to exclude the proposed opinion testimony of Paul Christoferson. Mr. Christoferson's area of expertise is electrical forensics. He has 40 years of experience in the electrical construction and consulting industry. He has spent over 20 years as a forensic construction consultant and participated as an electrical expert in over 50 construction defect cases. He has experience with design and installations, maintenance, project management and cost estimating, property loss assessments, and code analysis. He has previously held electrician licenses in several states, including Oregon and California.

Mr. Christoferson visited the site within two weeks of the flood. He originally prepared electrical system cost estimates when he was employed by J.S. Held. He is now a principal of PC Consulting, specializing in insurance loss assessments. Called by the insurers, he intends to testify generally about his investigation and analysis of the electrical aspects of IRG's facility, including the original design, past and future repairs, damages, and industry standards. In support, he provides three separate electrical damage

estimates and explains the formula for reaching these estimates. He is also expected to rebut the testimony of IRG's electrical opinion witness, Kenneth Kutchek, on several points. IRG seeks to exclude several opinions that Mr. Christoferson included in his report. The court addresses these arguments in turn.

      A.      *Fact Versus Expert Testimony.*

IRG first argues that Mr. Christoferson's first two opinions are factual observations not worthy of expert status. "[L]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning [that] can be mastered only by specialists in the field." Fed. R. Evid. 701 advis. comm. n. (2000) (internal quotations omitted). "A witness can qualify as both a fact and expert witness and an expert may base an opinion on fact or data in the case that the expert has personally observed." *United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012). The distinction between expert and lay testimony can be unclear when a witness with specialized knowledge was also personally involved in investigating the facts. *Id.* at 709.

Dual-role testimony is permitted, though the court is careful of monitoring the inherent risks of such testimony, including the risk of confusing the jury and the risk that the jury may unduly credit the opinion testimony. *See United States v. Thomas*, 970 F.3d 809, 814 (7th Cir. 2020); *United States v. Jett*, 908 F.3d 252, 267 (7th Cir. 2018). For this reason, in such situations, the court's practice is to require counsel to elicit fact and opinion testimony separately—present fact testimony, then lay a foundation for Rule 702 testimony, tender the witness, and then present expert opinions. *See Jett*, 908 F.3d at 269. The court will give a cautionary instruction to the effect "that the testimony [the jury] is about to hear is the witness's opinion based on training and experience, not firsthand knowledge, and that it is for the jury to determine how much weight, if any, to give that opinion." *Id.* 269-70.

So if IRG's concern is that the jury will unduly attribute "expert" status to fact testimony, this is materially a matter of trial protocol, not exclusion. "Seamlessly switching back-and-forth between expert and fact testimony does little to stem the risks associated with dual-role witnesses." *United*

3

*States v. Jones*, 763 F.3d 777, 803 (7th Cir. 2014), *vacated on other grounds sub nom.*, *United States v. Drake*, 774 F.3d 1104 (2014). IRG nonetheless seeks to preclude Mr. Christoferson from delivering the following two opinions as an expert:

- The electrical system inspection and scope production originally included all systems operational or non-operational at the time of the event. The repair scope was to be derived from this overall scope.

- The inspection(s) completed of the primary power systems in the building revealed that they were of the 1941 era and that half of them had been taken off-line before the loss event occurred. The existing operational systems had already been supplemented with other newer equipment.

IRG concedes that these opinions are "potentially admissible as factual observations based on his role in the claims adjustment team." The insurers argue that Mr. Christoferson offers both "factual observations" and "electrical expertise."

The first opinion and at least part of the second opinion strike as factual, though greater context will come during the trial; but part of the second opinion may require specialized knowledge and may be designed to aid the jury to understand the evidence and decide an issue of consequence. *See* Fed. R. Evid. 702. That will be resolved at trial, but Mr. Christoferson's fact testimony should be elicited before his expert testimony. The court denies IRG's motion because this isn't a basis to exclude his testimony.

B.   *Helpfulness (Fit).*

Mr. Christoferson provides three calculations for repairs using replacement cost value, actual cost value with 50 percent depreciation, and actual cost value with 60 percent depreciation. Mr. Christoferson said the actual cost values take into consideration a depreciated amount for the age and continued life expectancy of the equipment. He says the electrical systems are 1941-era electrical equipment and had been in use for 75 years. IRG argues that the age of the system is not relevant; but it is when actual cash value (what Mr. Christoferson calls actual cost value) and depreciation remain in play. His proposed testimony thus still fits this case. *See* Fed. R. Evid. 702(a); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150

4

(1999); *Daubert*, 509 U.S. at 591. Any debate as to his inputs goes to weight, not admissibility. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 710 (7th Cir. 2013) ("selection of data inputs to employ in a model is a question separate from the reliability of the methodology reflected in the model").

IRG's electrical specialist described the electrical system as operational and fully functioning at the time of the flood, but merely turned off because the tenants didn't need more power. Mr. Christoferson contests this opinion. He nonetheless admits his estimates weren't reduced for any of the equipment's non-operational status. IRG consequently argues that his opinion doesn't fit the case. But this argument takes too slim a view of this opinion. IRG, with its opinion witnesses, will contend that the insurers, whether through J.S. Held or McLarens Claims Services, received less than full consideration for the equipment the company lost, and Mr. Christoferson can explain that his cost estimates provide, as counter to this point, a conservative perspective when non-operational status has been put aside. And he may testify as to the prior and post-flood electrical functioning of the facility's equipment.

      C.      *The Factual Bases of Mr. Christoferson's Rebuttal Testimony.*

IRG next challenges certain opinions as lacking a sufficient factual basis. An opinion witness must have a sound factual basis before being declared an expert. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 590. Even if eminently qualified, experts cannot offer opinions based solely on their say-so (what lawyers call *ipse dixit*). *See Kumho Tire*, 526 U.S. at 157; *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Expert testimony must be based on sufficient and known facts. *Daubert*, 509 U.S. at 590; Fed R. Evid. 703; *see, e.g., Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008) (evidence of one sale was an insufficient basis to calculate an average of sales over twenty years); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904-05 (7th Cir. 2007) (excluding expert because the "mere existence of a temporal relationship" was an unreliable basis to show a causal relationship between medication and symptoms).

Mr. Christoferson plans to testify that the Kutchek report (what he calls the Robson Forensic Report or RFR) erroneously states that McLarens initially acknowledged the original electrical system

5

capacity and the need to replace all six substations in their entirety (where all eleven transformers sat). The court cannot say on this record, and scant explanation from IRG, that this opinion lacks an adequate factual basis or fails to fit the debates the jury must decide. This strikes as a factual quibble at best, and the civil justice system "relies on cross-examination to alert the jury to the difference between good data and speculation." *Schultz v. Akzo Nobel Paints*, 721 F.3d 426, 432 (7th Cir. 2013). The jury will decide which opinion witness leans on faulty facts. Whether Mr. Christoferson directly contradicts Mr. Kutchek's testimony is argument for trial, not a basis for exclusion.

      Mr. Christoferson also will testify that the Kutchek report erroneously finds that IRG lost 92 percent or 10,800 kVA (kilovolt-amps) in electrical system capacity from the flood. IRG argues that this opinion isn't based on sufficient facts. At deposition, Mr. Christoferson testified, "We were never given plans and documents that showed their total capacity. We—we were never given any of that to make any of our own calculations, and we—I mean, it was never part of our scope to—to calculate their capacity or redundancy or anything else of those matters." The insurers explain, however, that Mr. Christoferson relies on IRG's site maintenance manager's statement that the company had cannibalized the system—that "parts had been taken from the other[] [systems]"—and his statement that not all the systems were functional or operational. Thus, Mr. Christoferson concludes that "you can't lose something that you don't have to begin with." "Assuming a rational connection between the data and the opinion . . . an expert's reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility." *Manpower,* 732 F.3d at 710; *accord Schultz,* 721 F.3d at 432.

      Mr. Christoferson also plans to testify that the Kutchek report erroneously concludes that IRG lost the redundancy of multiple electrical substation sources. IRG argues that the following testimony from Mr. Christoferson's deposition shows he lacked sufficient data to reach such a conclusion: "the redundancy factor of the system is being replaced, yes, if it existed at the time. We don't even know if it existed at the time because we didn't—I didn't inspect all of those systems and all of those conduits and

all of those wires to even verify whether they were there or not. So I guess I can't answer the redundancy question fully because I never inspected the redundant system." This argument fails in the same way that the argument against his capacity opinion fails—if certain units were non-functional, then IRG could not have lost certain electrical capacity as well as the operational redundancy these units otherwise would have provided the company. This too is a matter of crossexamination. *See Manpower,* 732 F.3d at 710.

The court has considered IRG's remaining other arguments, often minor or factual quibbles, and finds no cogent basis for excluding opinions under Rule 702 or *Daubert*. IRG attacks certain opinions from Mr. Christoferson as factual disagreements with Mr. Kutchek; and, though the jury will decide the facts at trial, these opinions remain helpful in aiding the jury to decide what weight should be given each proposed Rule 702 witness. The jury may consider the basis for their opinions in deciding the weight to give their opinions. Whether the data is right or wrong isn't on this record a matter of excluding proposed opinion but a vehicle for trial lawyers to do their job.

## CONCLUSION

Accordingly, the court DENIES IRG's motion to exclude [ECF 146] as it pertains to Paul Christoferson.

SO ORDERED.

May 15, 2023                                        *s/ Damon R. Leichty*
                                                    Judge, United States District Court