UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

INDIANA GRQ, LLC,

          Plaintiff,

    v.                                            CAUSE NO. 3:21-cv-227 DRL

AMERICAN GUARANTEE AND
LIABILITY INSURANCE COMPANY *et al.*,

          Defendants.

FINAL JURY INSTRUCTIONS

1.

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially. Do not allow sympathy, prejudice, fear, or public opinion to influence you. Do not be influenced by any person's race, color, religion, national ancestry, or sex.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

2.

The plaintiff, Indiana GRQ, LLC, sued the defendants after flooding damaged its South Bend facility. Indiana GRQ owns the facility. IRG Realty Advisors, LLC manages the facility.

IRG purchased a property insurance policy called the Zurich EDGE Policy. All seven insurers named as defendants participated in a quota-share program where they shared coverage under this policy according to their assigned and fixed percentages. Each insurance company also issued its own policy.

Indiana GRQ claims that each insurer breached the Zurich EDGE Policy by not paying the full amount owed for damage to Indiana GRQ's electrical equipment. In addition, Indiana GRQ claims that each insurer, other than Interstate Fire & Casualty Company, breached the Zurich EDGE Policy by not paying the full amount owed for environmental remediation. Indiana GRQ must prove a contract claim by a preponderance of the evidence.

Indiana GRQ also claims the insurers acted in bad faith. Indiana GRQ alleges two theories of bad faith. Indiana GRQ alleges that all seven insurers acted in bad faith as it pertains to Mr. Jeff Pope. Separately, Indiana GRQ says six of the insurers, including American Guarantee and Liability Insurance Company, Starr Surplus Lines Insurance Company, Chubb Custom Insurance Company, General Security Indemnity Company of Arizona, Axis Surplus Insurance Company, and Ironshore Specialty Insurance Company, but excluding Interstate Fire & Casualty Company, acted in bad faith by withholding cost estimates. Indiana GRQ must prove the liability of the insurers for a bad faith claim by clear and convincing evidence.

The insurers deny they breached any contractual obligation, deny they acted in bad faith, and dispute Indiana GRQ's damages. The insurers are not required to disprove Indiana GRQ's claims.

3.

A breach of contract occurs when a party fails to perform all the duties it agreed to do.

4.

To succeed on a breach of contract claim, Indiana GRQ must prove each of the following things by a preponderance of the evidence:

1.      The parties entered into a contract;

2.      Indiana GRQ performed its part of the contract;

3.      An insurer failed to perform its part of the contract;

4.      That insurer's breach of contract damaged Indiana GRQ;

5.      The parties reasonably anticipated these damages when they entered into the contract; and

6.      That insurer's breach of contract was a responsible cause of these damages.

If you find that Indiana GRQ has proven each of these things by a preponderance of the evidence, your verdict should be for Indiana GRQ and you should consider the question of damages as to this claim.

If you find that Indiana GRQ has failed to prove any one of these things by a preponderance of the evidence, your verdict should be against Indiana GRQ and you will not consider the question of damages as to this claim.

5.

 To prove a bad faith claim, Indiana GRQ must prove each of the following things by clear and convincing evidence:

1.      There was no legitimate basis for an insurer's conduct;

2.      That insurer acted with dishonest purpose, furtive design, or ill will; and

3.      That insurer's conduct was a responsible cause of damages to Indiana GRQ.

If you find that Indiana GRQ has proven each of these things by clear and convincing evidence as to a defendant, your verdict should be for Indiana GRQ and you should consider the question of damages for this claim as to that defendant.

If you find that Indiana GRQ has failed to prove any one of these things by clear and convincing evidence as to a defendant, your verdict should be for that defendant and you will not consider the question of damages for this claim as to that defendant.

6.

An insurer must deal in good faith with its insured. You should consider all the evidence in deciding whether an insurer acted in bad faith.

7.

When I say a particular party must prove something by "a preponderance of the evidence," this is what I mean: when you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

8.

When I say a particular party must prove something "by clear and convincing evidence," this is what I mean: when you have considered all the evidence in the case, you must be persuaded that the facts supporting that claim are highly probable. Proof by clear and convincing evidence is a higher standard of proof than proof by a preponderance of the evidence.

9.

A person's conduct is legally responsible for causing damages if:

1.      The damages would not have occurred without the conduct; and

2.      The damages were a natural, probable, and foreseeable result of the conduct.

This is called a "responsible cause."

10.

If you decide for a defendant on the question of liability, then you should not consider the question of damages for that particular defendant.

11.

If you decide that an insurer has breached the contract, the measure of Indiana GRQ's damages is the amount that would put Indiana GRQ in the same position it would have been in had the contract been fulfilled.

For its breach of contract claim, Indiana GRQ may only recover the loss actually suffered and should not be placed in a better position than if an insurer had not breached the contract.

12.

If you decide that an insurer is liable to Indiana GRQ under Indiana GRQ's bad faith claim, then you must decide the amount, if any, that will fairly compensate Indiana GRQ for any damages that were responsibly caused by that insurer's bad faith conduct.

13.

You should not make duplicative compensatory awards for the same wrong. For any single wrong, Indiana GRQ is only entitled to a single recovery of compensatory damages, regardless of how many defendants could be liable for that single wrong or how many theories of recovery could apply to that single wrong.

Base your decision on the evidence and not on guess or speculation. However, damages need not be proven to a mathematical certainty.

14.

The insurers argue that any compensatory damages for Indiana GRQ's breach of contract claim should be reduced because Indiana GRQ did not mitigate its damages. The insurers must prove by a preponderance of the evidence that:

1.    Indiana GRQ did not take reasonable actions to reduce its damages; and

2.    That failure caused an identifiable harm not attributable to the insurers' breach of contract.

If the insurers have proven these two things by a preponderance of the evidence, you should reduce any amount you might award Indiana GRQ for damages, if any, by the amount Indiana GRQ could have avoided by reasonable effort without risk of other substantial loss or injury. The insurers must prove both that the reduction should be made and its amount.

15.

If you find for Indiana GRQ on its bad faith claim, you may assess punitive damages against an insurer. Punitive damages may be awarded if you decide that Indiana GRQ proved by clear and convincing evidence that either:

1.    An insurer's actions amount to willful and wanton misconduct; or

2.    An insurer acted maliciously, fraudulently, oppressively, or with gross negligence, and the insurer's actions were not the result of mistake of fact, an honest error of judgment, overzealousness, negligence, or other human failing.

If you find that punitive damages are appropriate, you must determine the amount of money you believe will be adequate to punish an insurer for what it did to Indiana GRQ and deter that insurer and other insurance companies from similar acts in the future.

In deciding the amount of punitive damages, you may consider the amount of actual or potential harm suffered by Indiana GRQ as a result of an insurer's bad faith conduct and the degree of reprehensibility of an insurer's bad faith conduct.

16.

The terms in the previous instruction on punitive damages have the following meanings:

"Gross negligence" is a voluntary act or failure to act done with reckless disregard of the consequences to another person.

"Wanton or willful" misconduct is an intentional act or failure to act done with reckless disregard of probable injury to a person, when the defendant knew of that probability and, if the defendant failed to act, it had the opportunity to avoid the risk.

"Malice" is an act or failure to act done intentionally, without legal authority or excuse, and with the intent to injury or harm.

"Fraud" is an act, failure to act, or concealment done knowingly or intentionally to cheat or deceive another person.

"Oppressiveness" is an act or failure to act done in a domineering, overbearing, or controlling manner that subjects another person to a cruel and unjust hardship.

"Reprehensible" means worthy of severe blame, severe criticism, or deserving of severe disapproval.

17.

To award punitive damages based on the actions of an insurer's agent, there must be evidence of positive or collusive action by the insurer, such as prior authorization of the doing and the manner of the agent's act, that the agent was unfit and the insurer was reckless in retaining the agent, or that the insurer ratified or approved the agent's action after the fact.

18.

The parties have stipulated, with respect to the breach of contract claim only, that the insurers did not act independently of one another.

As to Indiana GRQ's bad faith claim, you must give separate consideration to each party when assessing punitive damages, if any.

19.

Some of the evidence in this case is limited to certain insurers and cannot be considered as to the others.

20.

A principal is one who authorizes another to act on its behalf, subject to the principal's control. The authorized person or entity is called an agent.

A company acts through its agents. If, within the scope of his authority, a company's agent wrongfully acts or fails to act, the company is liable for that action or inaction.

21.

Knowledge of an insurer's agent acquired within the scope of his agency is knowledge of an insurer, regardless of whether the agent shared his knowledge with anyone else.

22.

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and the stipulations. A stipulation is an agreement between both sides that certain facts are true.

23.

The parties have stipulated, or agreed, that certain facts are true. You must treat these facts as having been proven for the purpose of this case:

1.      Indiana GRQ, LLC owned a manufacturing facility at 701 West Chippewa Avenue in South Bend, Indiana (Facility).

2.      The Facility occupies approximately 1 million square feet.

3.      IRG Realty Advisors, LLC manages the Facility.

4.      Defendant Insurance Companies are American Guarantee and Liability Insurance Company, Interstate Fire & Casualty Company, Starr Surplus Lines Insurance Company, Chubb Custom Insurance Company, General Security Indemnity Company of Arizona, Axis Surplus Insurance Company, and Ironshore Specialty Insurance Company.

5.      Interstate Fire & Casualty Company issued a separate policy to plaintiff, for the 2016-2017 policy year, accepting 10 percent of the risk, or a limit of $3 million.

6.      The loss occurred on August 15-16, 2016 when 7.69 inches of rain fell in an eight to twelve hour period and caused flooding that impacted, among other things, the South Bend Facility.

7.      As a result, the loss investigation was originally coordinated by claims professionals from American Guarantee and Liability Insurance Company, including American Guarantee's National General Adjuster Shawn Keating.

8.      Representatives of the DeHayes Group also met with representatives of the insurance team during the pendency of the claim.

9.      At the time of the loss, Indiana GRQ had eleven electrical transformers in six substations below grade at the Facility.

24.

In determining whether any fact has been proven, you should consider all of the evidence bearing on the question, regardless of who introduced it.

25.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury may make reasonable inferences based on the evidence in the case.

26.

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

27.

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, including any party to the case, you may consider, among other things: the ability and opportunity the witness had to see, hear, or know the things that the witness testified about; the witness's memory; any interest, bias, or prejudice the witness may have; the witness's intelligence; the manner of the witness while testifying; the witness's age; and the reasonableness of the witness's testimony in light of all the evidence in the case.

USDC IN/ND case 3:21-cv-00227-DRL     document 229     filed 05/25/23     page 11 of 16

28.

During the trial, certain testimony was presented to you by reading depositions. You should give this testimony the same consideration you would give it had the witness appeared and testified here in court.

29.

You have heard witnesses give opinions about matters requiring special knowledge or skill. In order of presentation during the trial:

- Ken Kutchek testified and offered opinions about electrical engineering.

- David Frangiamore testified and offered opinions about insurance industry customs and practices.

- Dr. B. Tod Delaney testified and offered opinions about environmental engineering and the environmental impacts that result from the release of PCBs from transformers.

You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all the other evidence in the case.

30.

You have heard the testimony of witnesses who testified to both facts and opinions. In order of presentation during the trial:

- Chaz Mello testified about facts and separately offered opinions about building, consulting, and cost estimating.

- Paul Christoferson testified about facts and separately offered opinions about electrical valuation and construction.

11

- Robert West testified about facts and separately offered opinions about environmental property damage assessment and PCB remedial action.

Each of these types of testimony should be given the proper weight. As to their fact testimony, consider the factors for weighing the credibility of witnesses discussed earlier in these instructions. As to their opinions, in deciding how much weight to give to their opinions, you should consider the reasons given for the opinion, the witness's qualifications, and all the other evidence in the case.

31.

You have seen demonstrative exhibits. Certain PowerPoint slides and documents have summarized facts or highlighted portions of documents, diagrams, charts, and schedules. These exhibits are used for convenience and to help explain the facts of the case. They are not themselves evidence or proof of any facts.

32.

You may consider statements given by parties and witnesses under oath before trial as evidence of the truth of what he said in the earlier statements, as well as in deciding what weight to give his testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with his testimony here in court, you may consider the earlier statement or conduct only in deciding whether his testimony here in court was true and what weight to give to his testimony here in court.

In considering a prior inconsistent statement or conduct, you should consider whether it was simply an innocent error or an intentional falsehood and whether it concerns an important fact or an unimportant detail.

33.

It is proper for a lawyer to meet with any witness in preparation for trial.

12

34.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

35.

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

36.

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded. This includes any press, radio, Internet, or television reports you may have seen or heard. Such reports are not evidence, and your verdict must not be influenced in any way by such publicity.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

37.

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

38.

Upon retiring to the jury room, select one of your number as your presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

A form of verdict has been prepared for you.

[*Form of verdict read*].

Take this form to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in, date, and sign the appropriate form.

39.

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

40.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not communicate with others about the case or your deliberations by any means. This includes oral or written communication, as well as any electronic

14

method of communication, such as telephone, cell phone, smart phone, iPhone, Android, computer, text messaging, WhatsApp, instant messaging, the Internet, chat rooms, blogs, websites, or social networking websites like Facebook, YouTube, Twitter, LinkedIn, SnapChat, Instagram, TikTok, or any other method of communication. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. This would unfairly and adversely impact the judicial process.

41.

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

15

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.