IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF
INDIANA SOUTH BEND DIVISION

| | |
|---|---|
| INDIANA GRQ, LLC, | ) |
| Plaintiff, | ) Cause No. 3:21-cv-00227-DRL-MGG |
| v. | ) |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, et al., | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF INDIANA GRQ, LLC'S OMNIBUS MOTION FOR ATTORNEYS' FEES, RELATED CLAIM/LITIGATION COSTS, AND EXPERT FEES BASED UPON THE JURY'S BAD FAITH FINDING AGAINST DEFENDANT INSURERS**

Plaintiff Indiana GRQ, LLC ("IRG") respectfully moves this Court to award: (i) attorneys' fees and related nontaxable claim/litigation costs; and (ii) expert witness fees and related costs. These costs are appropriate based upon the jury's finding that Defendants American Guarantee and Liability Insurance Company, Interstate Fire & Casualty Company, Starr Surplus Lines Insurance Company, Chubb Custom Insurance Company, General Security Indemnity Company of Arizona, Axis Surplus Insurance Company, Ironshore Specialty Insurance Company (collectively, "Defendant Insurers") each violated their duty of good faith and fair dealing when they denied IRG's claim for insurance coverage. As specified herein, the fees and costs sought are awardable under Fed. R. Civ. P. 54 and Indiana law and are otherwise reasonable in amount.

**FACTUAL BACKGROUND**

IRG recognizes that the Court is very familiar with the factual background of this dispute. In brief, IRG owns a facility in South Bend, Indiana that is currently being leased to tenants. The

facility was historically used to manufacture Studebaker vehicles and aircraft engines during World War II. This action resulted because Defendant Insurers refused to pay for the replacement of electrical equipment that was damaged during a "100 year" flood that took place in 2016. As a result of the flood, underground transformers released PCB containing fluids into the substructure of the facility causing significant environmental damage. IRG asserted breach of contract and bad faith claims against Defendant Insurers. After an eight-day trial, the jury found in favor of IRG on both its breach of contract and bad faith counts, awarding IRG $24,719,043 in compensatory damages and punitive damages totaling $87,500,000 ($12,500,000 against each Defendant Insurer). ECF No. 235. This Court confirmed the jury's award and final judgment was entered on June 20, 2023. ECF Nos. 239, 240.

## ARGUMENT

Indiana law is clear that an insured who proves that its insurer acted in bad faith is entitled to attorneys' fees and all consequential damages flowing from the insurer's conduct. *See Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993) (observing that "all damages directly traceable to the wrong and arising without an intervening agency are recoverable" in bad faith action); *Johnson v. Fortis Ins. Co.*, No. 2:05-CV-20 PPS PRC, 2006 WL 1707242, at *5 (N.D. Ind. June 15, 2006) ("if Plaintiffs were to prevail on their bad-faith claim, they would be able to recover the panoply of tort damages associated with the denial of their claim and not just the damages stemming from the unpaid medical bills"). The standard for an insurer's liability to pay attorneys' fees for its bad faith conduct is the same as the standard to prove the bad faith conduct itself. *See Patel v. United Fire & Cas. Co.*, 80 F. Supp. 2d 948, 962 (N.D. Ind. 2000). Authority to award attorneys' fees for a finding of bad faith against an insurer is also grounded in IND. CODE § 34–52–

2

1–1(b)(3), which authorizes an award of attorneys' fees when "the court finds that either party . . . litigated the action in bad faith."

In accordance with Indiana law, Fed. R. Civ. P. 54, and the jury's bad faith finding against Defendant Insurers, this Court should award IRG two categories of damages: (i) the attorneys' fees and related nontaxable litigation costs reasonably incurred and paid by IRG in contesting Defendant Insurers' wrongful bad faith claim denial; and (ii) expert witness fees and related costs reasonably incurred and paid by IRG.

I. **Attorneys' Fees and Related Nontaxable Claim/Litigation Costs**

Two law firms worked on IRG's insurance coverage action. Miller Friel, PLLC served as lead counsel and Lee & Zalas, P.C. served as local Indiana counsel. IRG was entirely successful in pursuit of both its breach of contract and bad faith claims, resulting in a judgment of over $112,000,000 in IRG's favor. This success was born by the work done by IRG's attorneys, whose fees and related litigation costs IRG has already paid (with the exception of the most recent invoices which IRG is in the process of paying). In light of the degree of success and inherent reasonableness of the amounts claimed, IRG respectfully submits that the Court should award the full amounts incurred and paid by IRG.

a. **Attorneys' Fees Incurred by IRG**

In evaluating an attorney fee motion under Fed. R. Civ. P. 54, the Court must determine whether or not the fees requested are reasonable. State law governs this analysis. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 259 n. 31, (1975). "The starting point in deciding any fee request's reasonableness is the lodestar—the rate charged and the hours worked." *Lock Realty Corp. IX v. U.S. Health, LP*, No. 3:05-CV-715 RM, 2012 WL 90150, at *2 (N.D. Ind. Jan. 10, 2012), *aff'd*, 707 F.3d 764 (7th Cir. 2013) (citing *Fortner v. Farm ValleyApplewood*

3

*Apartments*, 898 N.E.2d 393, 400 (Ind. App. 2008)); *In re Estate of Inlow*, 735 N.E.2d 240, 257 (Ind. App. 2000)).  It is the obligation of the requesting party to supply sufficient fee documentation with adequate explanation in order to provide the court with a basis for evaluating the claim.  *See Indiana Fine Wine & Spirits, LLC v. Cook*, No. 120CV00741TWPMJD, 2020 WL 6905311, at *1 (S.D. Ind. Nov. 24, 2020) (internal quotation omitted).

When considering the proper rate to apply to an attorney's work, courts have held that "[a] reasonable hourly rate is the market rate for the services rendered, which may be established by an attorney's actual billing rate for similar litigation." *Rayter v. Crawford Ave. Anesthesia Provider Servs. LLC*, No. 2:12-CV-75-RLM-APR, 2013 WL 5498255, at *5 (N.D. Ind. Oct. 1, 2013).  The "market rate" for lodestar purposes is not necessarily the "local market" rate where the case was tried, but may instead be an out-of-town rate commensurate with the sophistication and nature of the work performed.  *See Mathur v. Board of Trustees of S. Illinois Univ.*, 317 F.3d 738, 742-743 (7th Cir. 2003) ("just because the proffered rate is higher than the local rate does not mean that a district court may freely adjust that rate downward . . . if an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount").  Indeed, "[t]he attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Spegon v. Cath. Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999).

Attorney affidavits or declarations are sufficient to establish their actual rate charged for similar work.  *See Lock Realty Corp. IX*, 2012 WL 90150, at *3.  Most importantly, the Seventh Circuit has instructed that "the best evidence of whether attorney's fees are reasonable is whether a party has paid them." *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008); *see also Rayter*, 2013 WL 5498255, at *5; *Stark v. PPM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004); *Medcom*

*Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520–21 (7th Cir. 1999); *Balcor Real Estate Holdings, Inc. v. Walentas–Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).

As to the second element of the lodestar—the number of hours spent—a court may consider numerous factors including those contained in Indiana Professional Conduct Rule 1.5. *Posey v. Lafayette Bank & Tr. Co.*, 583 N.E.2d 149, 152 (Ind. Ct. App. 1991). Such factors may include "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," "the amount involved and the results obtained," "the nature and length of the professional relationship with the client," and "the experience, reputation, and ability of the lawyer or lawyers performing the services." *See* Professional Conduct Rule 1.5.

The attorneys from Miller Friel, PLLC who worked on this case were Mark E. Miller, Brian G. Friel, Benjamin W. Massarsky, William T. O'Neil, and Natalie Seales. Legal assistants Kristen P. Schumacher and Sharon McDermott also contributed, as appropriate. The attorneys from Lee & Zalas, P.C. who worked on this case were Clint A. Zalas, Jeremy J. McDonald, and Nathan D. Ridgway. Each individual's rates, overall fees, and background are outlined below:

- Mark E. Miller's hourly rate ranged from $820 to $985 during this case. *See* Declaration of Mark E. Miller at ¶ 2 ("Miller Decl."). These are the same rates that Mr. Miller's clients have paid for his work in other matters during the same general time period. *Id*. As of July 3, 2023, the attorney fees attributable to his work on this case are $1,379,423.50. *Id*. Mr. Miller has been an insurance coverage attorney for over thirty years, working for such firms as Anderson Kill, P.C. and the international law firm Greenberg Traurig, LLP. *Id*. at ¶ 3. Prior to co-founding Miller Friel, PLLC, Mr. Miller along with Brian G. Friel managed Greenberg Traurig LLP's Insurance Recovery and Advisory Practice Group. *Id*. His views

5

on insurance have been published in many prominent publications, including Forbes, Business Insurance, Legal Times, Treasury and Risk Management, Risk, and The National Law Journal. *Id*. at ¶ 4. Mr. Miller is sought after nationwide for his knowledge, skill, and ability in litigating insurance coverage disputes. *Id.* at ¶ 5. Mr. Miller received his B.S. from Allegheny College, his M.S. from the University of Cincinnati, his M.B.A. from Houston Christian University, and his J.D. from South Texas College of Law, where he was an Editor of the South Texas Law Review. *Id*. at ¶ 6.

- Brian G. Friel's hourly rate ranged from $820 to $985 during this case. *See* Declaration of Brian G. Friel at ¶ 2 ("Friel Decl."). These are the same rates that Mr. Friel's clients have paid for his work in other matters during the same general time period. *Id.* As of July 3, 2023, the attorney fees attributable to his work on this case are $1,172,609.00. *Id.* Mr. Friel has been an insurance coverage attorney for over twenty-five years, working for such firms as Swidler Berlin LLP and Greenberg Traurig LLP. *Id.* at ¶ 3. Prior to co-founding Miller Friel, PLLC, Mr. Friel along with Mr. Miller managed Greenberg Traurig LLP's Insurance Recovery and Advisory Practice Group. *Id*. Mr. Friel's insurance coverage expertise is relied upon by Fortune 500 companies and his thought leadership has been published by the American Bar Association and the Environmental Claims Journal, among others. *Id*. at ¶ 5. Mr. Friel is also a frequent speaker on major issues of insurance coverage. *Id*. Mr. Friel is a graduate of Boston College *magna cum laude* and a graduate of St. John's University School of Law *cum laude*, where he was an Editor of the St. John's University Law Review. *Id*. at ¶ 6.

- Benjamin W. Massarsky's hourly rate was $595 during this case. *See* Declaration of Benjamin W. Massarsky at ¶ 2 ("Massarsky Decl."). This is the same hourly rate that Mr. Massarsky's clients have paid for his work in other matters during the same general time period. *Id*. As of July 3, 2023, the attorney fees attributable to his work on this case are $660,628.50. *Id*. Mr. Massarsky has been an attorney for over thirteen years, half of which he has focused exclusively on insurance coverage litigation. *Id*. at ¶ 3. Mr. Massarsky worked at Gilbert LLP, among other law firms, prior to joining Miller Friel, PLLC. *Id*. He has written on various insurance coverage matters for Law360 and the National Law Review. *Id*. at ¶ 4. Mr. Massarsky received his B.A. in History and Government from Cornell University and his J.D. from the American University, Washington College of Law, where he graduated *magna cum laude* and Order of the Coif and was the founding executive editor of the American University Business Law Review. *Id*. at ¶ 5.

- William T. O'Neil's hourly rate ranged from $600 to $700 during this case. *See* Declaration of William T. O'Neil at ¶ 2 ("O'Neil Decl."). These are the same rates that Mr. O'Neil's clients have paid for his work in other matters during the same general time period. *Id*. As of July 3, 2023, the attorney fees attributable to his work on this case are $954,930.00. *Id*. Mr. O'Neil has been an insurance coverage attorney for over thirty years and has worked at such firms as Covington & Burling LLP and Swidler Berlin LLP, including litigating some of the largest and most complex insurance cases in the country. *Id*. at ¶ 3. In addition, Mr. O'Neil has held senior legal positions for the Federal Government. *Id*. Mr. O'Neil graduated from the University of Notre Dame and from Duke University School of Law. *Id*. at ¶ 4.

- Natalie Seales's hourly rate for this case was $475. *See* Declaration of Natalie Seales at ¶ 2 ("Seales Decl."). This is the same rates that Ms. Seales' clients have paid for her work performed in 2023 in other matters. *Id*. As of July 3, 2023, the attorney fees attributable to her work on this case are $102,837.50. *Id*. Ms. Seales earned her B.A. in journalism with a minor in English from the University of Mississippi where she was also awarded the university's highest academic honor—the Taylor Medal. *Id*. at ¶ 3. She earned her J.D. from George Mason University's Antonin Scalia Law School, where she was the Vice Chair of Membership on Moot Court Board and the Notes Editor on the Civil Rights Law Journal. *Id*. at ¶ 4.

- Kristen P. Schumacher is a legal assistant at Miller Friel, PLLC. *See* Declaration of Kristen P. Schumacher at ¶ 1 (Schumacher Decl."). Her hourly rate was $230 during this case. *Id*. at ¶ 2. This is the same rate that clients of Miller Friel, PLLC have paid in other matters for Ms. Schumacher's work during the same general time period. *Id*. As of July 3, 2023, the fees attributable to her work on this case are $27,416.00. *Id*. She has been a legal assistant for over 14 years, including at such firms as Greenberg Traurig LLP. *Id*. at ¶ 3.

- Sharon McDermott is a legal assistant at Miller Friel, PLLC. *See* Declaration of Sharon McDermott at ¶ 1 ("McDermott Decl."). Her hourly rate was $230 during this case. *Id*. at ¶ 2. This is the same rate that clients of Miller Friel, PLLC have paid in other matters for Ms. McDermott's work during the same general time period. *Id*. As of July 3, 2023, the fees attributable to her work on this case are $35,374.00. *Id*. She has been a legal assistant for 30 years. *Id*. at ¶ 4.

- Clint A. Zalas's hourly rate was $325 during this case. *See* Affidavit of Clint A Zalas ¶ 4. As of July 3, 2023, the attorney fees attributable to his work on this case are $55,412.50. *Id*. at ¶ 5. Mr. Zalas is admitted to practice in the State of Indiana, Northern District of Indiana, the Southern District of Indiana and U.S. Court of Appeals 7th Circuit. *Id*. at ¶ 2. He was admitted to practice in the State of Indiana, Northern District of Indiana and Southern District of Indiana in 2001. *Id.* He was admitted to practice in the 7th Circuit in 2006. *Id*. Mr. Zalas is the principal member of the law firm of Lee and Zalas and counsel of record for plaintiff, Indiana GRQ, LLC. *Id*. at ¶ 3.

- Jeremy J. McDonald's hourly rate was $325 during this case. *See* Affidavit of Jeremy J. McDonald at ¶ 5. As of July 3, 2023, the attorney fees attributable to his work on this case are $16,900.00. *Id*. at ¶ 6. Mr. McDonald is admitted to practice law in the State of Indiana and was sworn in as a member of the state bar on October 11, 2016. *Id*. at ¶ 2. He was also admitted to practice in the Northern and Southern District of Indiana on July 27, 2018 and September 7, 2018, respectively. *Id*. He remains able to practice before both federal courts. *Id*. Mr. McDonald is an associate attorney with the law firm of Lee & Zalas, P.C. and aided Clint A. Zalas, counsel of record for IRG during IRG's litigation in this case. *Id*. at ¶ 3.

- Nathan D. Ridgway's hourly rate was $325 during this case. *See* Affidavit of Nathan D. Ridgway at ¶ 4. As of July 3, 2023, the attorney fees attributable to his work on this case are $3,477.50. *Id*. at ¶ 5. Mr. Ridgway is admitted to practice in the Northern District of Indiana and the State of Indiana and have been admitted since 2020 and 2021, respectively. *Id*. at ¶ 2. He was previously admitted to practice in the State of Missouri beginning in 2017 and is now currently an inactive member of the Missouri Bar. *Id*. Mr. Ridgway is an

associate attorney with the law firm of Lee & Zalas, P.C. and aided Clint A. Zalas, counsel of record for IRG, during litigation of the matter. *Id*. at ¶ 3.

The attorneys' fee amount sought by IRG in this matter is reasonable and should be awarded in full under Seventh Circuit law. First and foremost, IRG's attorney rates are reasonable because they are the rates actually paid by clients of Miller Friel, PLLC and Lee & Zalas, P.C., including by IRG here. *See* Declaration of Mark Miley at ¶ 5 ("Miley Decl."). These rates and time spent reflect the highly specialized nature of the experience necessitated by the unusual and complex posture of this case, which included arguments concerning a highly complex quota share insurance program, complicated analysis of chemical contamination under federal environmental law, and evaluation of the use, capacity, and value of electrical equipment.

This litigation demanded no less than the level of expertise possessed by IRG's counsel. It required 5 years of work, involved the production of tens of thousands of pages of documents and 20 depositions, and included myriad discovery, dispositive, and trial motions. The litigation culminated in an eight-day jury trial in which twenty witnesses testified and dozens of exhibits were introduced. Given the facts of this case, the jury verdict of $112 million was well justified, but it also reflects years of attorney work and skilled counsel. The attorneys' fees award sought by IRG represent roughly 3.9% of the jury's award.

These facts, coupled with the declarations of counsel and of IRG confirming payment, Miley Decl. at ¶ 5, provide powerful evidence of the appropriateness of the fees sought by IRG in this case. IRG respectfully requests that the Court award the full attorneys' fees sought in the amount of $4,409,008.50.

b.     **Related Nontaxable Claim/Litigation Costs**

In addition to an attorney fee award discussed above, Fed. R. Civ. P. 54 and Indiana law also permit IRG to recover its nontaxable claim and litigation costs that flow directly from—and were necessitated by—Defendant Insurers' bad faith conduct. *See Hickman*, 622 N.E.2d at 519; *Johnson*, 2006 WL 1707242, at *5. The nontaxable claim and litigation costs incurred by IRG in this action are as follows:

*Claim Costs*

| **Category** | **Amount** | **Details/Notes** |
|---|---|---|
| Hull & Associates/Verdantas | $105,864.74 | Fees and costs from environmental technical/regulatory consultants to determine and prepare assessment of necessary PCB remediation |
| Vorys Sater Seymour and Pease LLP | $35,169.60 | Fees and costs from environmental counsel who consulted with IRG and its environmental technical/regulatory consultants on necessary PCB remediation |
| | | |
| **SUBTOTAL** | **$141,034.34** | |

*Litigation Costs*

| **Category** | **Amount** | **Details/Notes** |
|---|---|---|
| Travel | $21,832.83 | Airfare/Trainfare, *e.g.* for depositions, site visits, trial, and trial preparation |
| Lodging | $28,720.87 | Hotels and hotel charges during travel |
| Ground Transportation | $4,616.60 | Includes airport parking, car rental, fuel, taxis and Ubers |
| Meals | $6,680.08 | Includes meals during travel, working lunches, deposition prep lunches |
| Cash tips | $365 | Out of pocket cash tips for hotel staff, restaurants, taxis, etc. |
| Document Vendor Costs | $15,106 | Costs for electronic discovery document vendor, Consilio |

11

| | | |
|---|---|---|
| CPI Group | $56,694.35 | Fees and costs regarding Rosolowski electrical replacement assessment |
| Brouse McDowell | $12,199.50 | Ohio local counsel fees |
| Van Winkle Baten | $5,770.06 | Mediation fees |
| Misc. | $11,772.83 | Copies, phone, research, shipping, and supplies |
| | | |
| **SUBTOTAL** | **$163,758.12** | |

The above costs are a true and accurate summary of the nontaxable claim and litigation costs incurred by IRG.  Further detail is provided in Exhibit A to the Miley Declaration and Exhibit B to the Friel Declaration.  IRG respectfully requests that the Court grant the aforementioned claim and litigation costs, in the combined amount of $304,792.46, that IRG expended due to Defendant Insurers' bad faith conduct.

**II.     Expert Fees**

IRG also seeks reimbursement for its expert fees incurred in this litigation.  Such non-taxable costs were claimed by IRG at trial as flowing from Defendant Insurers' bad faith, Tr. 842-43, and are appropriate under Fed. R. Civ. P. 54 and Indiana law.  IRG utilized three expert witnesses who issued reports and testified at the trial:  Kenneth Kutchek, David Frangiamore, and Dr. B. Tod Delaney.  IRG respectfully requests that the Court order that the fees incurred by these experts be paid by Defendant Insurers as a result of the jury's finding that they engaged in bad faith conduct.

An insured who proves bad faith is entitled to the full range of costs proximately tied to the insurer's conduct.  *See Hickman*, 622 N.E.2d at 519; *Johnson*, 2006 WL 1707242, at *5.  Expert fees and costs, much like attorneys' fees, are part of the consequential damages to which an insured

is entitled. Such costs and fees are inextricably linked with the litigation itself, made necessary precisely because of Defendant Insurers' conduct in wrongly denying IRG's insurance claim.

Although it appears that no Indiana court has yet addressed this precise issue[1], other courts that have considered requests for expert witness fees upon a finding of bad faith have not hesitated to award such costs to insureds. *See, e.g., Wall v. Country Mut. Ins. Co.*, 319 F. Supp. 3d 1227, 1235 (W.D. Wash. 2018) (expert fees that are a result of an insurer's bad faith conduct can be recovered as a matter of Washington law); *Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 11CV1282-WQH-DHB, 2014 WL 12514885, at *9 (S.D. Cal. Mar. 28, 2014), *aff'd*, 851 F.3d 976 (9th Cir. 2017) (expert witness fees and costs are recoverable as an element of insured's damages related to the bad faith claim); *Allied Processors, Inc. v. W. Nat. Mut. Ins. Co.*, 2001 WI App 129, ¶ 53 (WI App 2001) ("We can discern no principle upon which to distinguish between attorney fees and other expenses incurred in litigating a bad faith claim, and Western National suggests none. We therefore conclude that a prevailing plaintiff in a bad faith action may recover as compensatory damages all reasonable expenses incurred in litigating the bad faith claim. Because Western National does not argue that the expenses for API's expert witnesses and for its attorney's travel and lodging were not reasonable, we conclude the trial court erred in not allowing these expenses as a component of API's compensatory damages"); *Linscott v. Rainier Nat. Life Ins. Co.*, 100 Idaho 854, 862, 606 P.2d 958, 966 (1980) (holding that bad faith finding includes entitlement to expert witness fees and remanding case for consideration of amount). The common

---

[1] *State v. Hicks*, 465 N.E.2d 1146, 1148 (Ind. Ct. App. 1984) is not relevant on this point. The lone statement in *Hicks* that Indiana law's bad faith exception to the American Rule did not include expert fees was *dicta* and, in any event, *Hicks* did not involve insurer bad faith and predated both *Hickman* and the current statutory and common law regimes authorizing awards of attorneys' fees. In other words, *Hicks* neither concerned those damages established by *Hickman* as recoverable in a bad faith insurance action nor addressed IND. CODE § 34–52–1–1(b)(3), the statutory basis for bad faith attorneys' fees outside of the insurance context.

thread in these cases is that where a finding of bad faith has been made, the offending insurer is liable for both attorneys' fees and expert witness fees.

There can be no question that the need for IRG's expert witnesses was a direct consequence of Defendant Insurers' bad faith conduct in denying IRG's claim. These witnesses were retained in late 2021 to provide expert reports, deposition testimony, and trial testimony in support of IRG's insurance coverage action. Had Defendant Insurers not committed bad faith in denying IRG's claim and forcing IRG to litigate, these experts would not have been necessary. As such, IRG respectfully requests that it be awarded the following expert witness fees and costs:

- Kenneth Kutchek's expert fees total $27,590.68. *See* Exhibit A to Miley Decl. Further detail on Mr. Kutchek's fees and costs is found in the Declaration of Mark Miley. *See Id*.

- David Frangiamore's expert fees total $101,781.59. *See* Exhibit B to Miley Decl. Further detail on Mr. Frangiamore's fees and costs is found in the Declaration of Mark Miley. *See Id*.

- Dr. B. Tod Delaney's expert fees total $310,751.22. *See* Exhibit to Miley Decl. Further detail on Dr. Delaney's fees and costs is found in the Declaration of Mark Miley. *See Id*.

The total expert witness fees are $440,123.49. These expert fees are reasonable and were necessary as a result of Defendant Insurers' conduct. Given the jury's bad faith finding against Defendant Insurers, IRG respectfully submits that such costs should be awarded to IRG.

## **CONCLUSION**

For the foregoing reasons, IRG respectfully requests that this Court award IRG its attorneys' fees in the amount of $4,409,008.50, IRG's related claim and litigation costs in the

amount of $304,792.46, and IRG's expert witness fees in the amount of $440,123.49. The total amount requested in this motion is $5,153,924.45.

DATED this 3rd day of July 2023                                    Respectfully submitted,

                                            By:      /s/ *Mark E. Miller*
                                                      Mark E. Miller
                                                      Brian G. Friel
                                                      Benjamin W. Massarsky
                                                      William T. O'Neil
                                                      MILLER FRIEL, PLLC
                                                      2445 M Street NW, Suite 910
                                                      Washington, DC  20037
                                                      Tel: (202) 760-3160
                                                      Fax: (202) 459-9537
                                                      millerm@millerfriel.com
                                                      frielb@millerfriel.com
                                                      massarskyb@millerfriel.com
                                                      oneilw@millerfriel.com

                                            By:      /s/ *Clint A. Zalas*
                                                      Clint A. Zalas
                                                      LEE & ZALAS, P.C.
                                                      54391 30th Street
                                                      South Bend, Indiana 46635
                                                      Tel: (574) 232-5923
                                                      Fax: (574) 232-5942
                                                      cazalas@lgzlegal.com

                            *Attorneys for Plaintiff Indiana GRQ, LLC*

## CERTIFICATE OF SERVICE

    I, Benjamin W. Massarsky, hereby certify that on July 3, 2023, a copy of the foregoing was served electronically on the parties listed below:

Peter E. Kanaris
David E. Heiss
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, Illinois 60606
dheiss@hinshawlaw.com
pkanaris@hinshawlaw.com

Jennifer J. Kalas
Hinshaw & Culbertson, LLP
322 Indianapolis Blvd.
Suite 201
Schererville, IN 46375
Tel: (219) 864-4521
Fax: (219) 864-5052
jkalas@hinshawlaw.com

Mitch Orpett
David Schroeder
Tribler Orpett & Meyer P.C.
225 West Washington, Suite 2550
Chicago, IL 60606
maorpett@tribler.com
deschroeder@tribler.com

                                                /s/ *Benjamin W. Massarsky*
                                                   Benjamin W. Massarsky