# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| INDIANA GRQ, LLC, | ) |
| Plaintiff, | ) Cause No. 3:21-cv-00227-DRL-MGG |
| v. | ) |
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, et al., | ) |
| Defendants. | ) |

## PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST

Pursuant to Federal Rule of Civil Procedure 59(e), the Plaintiff, Indiana GRQ, LLC ("IRG"), moves the Court to amend the June 20, 2023 judgment by awarding prejudgment interest.

## INTRODUCTION

On August 15, 2016, rainwater flooded IRG's South Bend Facility causing significant damage to the Facility's electrical infrastructure and the release of Polychlorinated biphenyls ("PCBs") from on-site electrical transformers. At trial, the jury found that the Insurers breached their contract with IRG by refusing to pay the full cost of restoring the Facility's electrical infrastructure to its pre-flood capabilities. The jury further found that the Insurers breached the contract by failing to pay the full cost of remediating the PCB contamination that resulted from the flood. IRG was awarded $24,719,043 in compensatory damages for its breach of contract claim. Of this, $11,577,827 was for IRG's electrical damages and $13,141,216 was for IRG's environmental damages. Down to the dollar, the jury adopted IRG's calculation of the damages it sustained from the Insurers' breach of their contract with IRG, with adjustments for inflation.

Indiana law permits prejudgment interest where damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time the plaintiff's damages accrue. Because IRG's damages were complete and ascertainable as of the August 15, 2016 date of the flood, IRG requests that the Court amend the judgment by awarding it $13,544,681.10 in prejudgment interest accruing from the date of loss to the entry of judgment on June 20, 2023. In the alternative, IRG requests that the Court award $7,568,767.80 in prejudgment interest accruing between August 23, 2019, the date on which the Insurers denied IRG's claim, and the entry of judgment on June 20, 2023.

## **ARGUMENT**

"Prejudgment interest is intended to compensate a plaintiff for delay in receiving money it should have received much earlier or should not have been required to spend in the first place." *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 981 F.3d 618, 634 (7th Cir. 2020). In diversity proceedings such as the present case, a "federal court must look to state law to determine the propriety of awarding prejudgment interest." *Id.* (internal citations and quotations omitted).

Under Indiana law, prejudgment interest is available when the plaintiff's damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time damages accrued. *Cincinnati Ins. Co. v. Bact Holdings, Inc.*, 723 N.E.2d 436, 441 (Ind. Ct. App. 2000). An award of "prejudgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable." *Song v. Iatarola*, 76 N.E.3d 926, 939 (Ind. Ct. App. 2017). A plaintiff's damages need not be liquidated for the plaintiff to receive prejudgment interest, and in "insurance cases, the rules are no different. Prejudgment interest, therefore, will . . . frequently be awarded to a prevailing insured." *Burleson v. Illinois Farmers Ins. Co*., 725 F. Supp. 1489, 1498 (S.D. Ind.

1989). The current rate of prejudgment interest is 8% when the parties' contract does not specify a different rate. *See Song*, 76 N.E.3d at 939; IND. CODE § 24-4.6-1-101.

Indiana's requirement that damages be "ascertainable" before awarding prejudgment interest does not mean "that whenever more than one figure representing damages . . . could have been adopted [by the factfinder], no prejudgment interest may be awarded." *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 607 (7th Cir. 1985), *abrogated on other grounds as recognized by Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 425 n.12 (7th Cir. 2015). In other words, "[w]hile damages that are the subject of a good faith dispute cannot allow for an award of prejudgment interest, damages can still be ascertained through accepted standards of valuation and fixed rules of evidence regardless of which parties's [sic] method of computation the jury selects." *Harlan Sprague Dawley, Inc. v. S.E. Lab Group*, 644 N.E.2d 615, 618 (Ind. Ct. App. 1994) (internal citation omitted). Accordingly, Indiana state courts and federal courts applying Indiana law have not hesitated to grant prejudgment interest in cases where a jury's damages award was the product of a simple calculation based on competent evidence, even where that evidence was challenged.

For instance, in *Simmons*, a manufacturer sued Pinkerton's, Inc. after inventory housed in the manufacturer's warehouse was damaged in a fire. 762 F.2d at 593. Under its contract with the manufacturer, Pinkerton's agreed to provide uniformed guard protection for the warehouse, and Pinkerton's represented that "its employees were trained both in security and in fire protection." *Id.* at 593-94. One evening, however, a fire started at the warehouse, and a Pinkerton's security guard later testified that he was unable to suppress the fire because he was not trained to use a reel fire hose in the warehouse and could not operate it properly. *Id.* at 594. The manufacturer sued Pinkerton's for breaching the contract by failing to provide personnel trained in fire protection and

security. *Id.* A jury awarded the manufacturer the damages that it claimed, and the district court awarded prejudgment interest. *Id.*

Pinkerton's appealed the award, contending that because it had disputed the manufacturer's method of calculating the damages it sustained from losing inventory, prejudgment interest could not be granted. *Id.* at 607. The Seventh Circuit flatly rejected this contention, observing that "[w]e do not think the fact that Pinkerton's disputed the use of various sales lists at trial . . . invalidates the claim for prejudgment interest" and noting several state and federal decisions applying Indiana law that awarded prejudgment interest "even though the fact finder had to use some degree of judgment in measuring damages." *Id.* Reasoning further that the "damages as presented and adopted by the jury in its verdict were a function of mathematical computation involving the subtraction of salvage proceeds from actual and average sale prices for the various inventory items," the Seventh Circuit held that the manufacturer's damages were ascertainable and that the prejudgment interest award was appropriate. *Id.* at 607-08.

Guided by *Simmons* years later, the United States District Court for the Southern District of Indiana rendered a similar decision in *Ind. Bell Tel. Co. v. Thrifty Call, Inc.*, 2005 U.S. Dist. LEXIS 3687 (S.D. Ind. Feb. 11, 2005). In that case, Ameritech Indiana, a telephone company, sued Thrifty Call, Inc., a call router, claiming that Thrifty had conspired with another company, Ward Products, to route long-distance calls from Thrifty's network through Ward Products' high-volume call circuit with Ameritech. *Id.* at *1-2. The result of the conspiracy was that Thrifty was able to avoid paying Ameritech Indiana millions of dollars in tariffs. *Id.* at *2. The case was tried to a jury, and to support its damages claim, Ameritech called an accountant who had prepared three estimates of Ameritech's damages as a witness. *Id.* at *4. Each estimate used the same method of calculating damages but offered different estimates of the "total minutes of usage for the long

distance calls that Thrifty Call terminated through Ameritech Indiana facilities by using the fraudulent scheme." *Id.* at *4-5.

The "jury adopted the middle of the three estimates, to the penny," *id.* at *5, and the district court awarded prejudgment interest after finding that Ameritech's damages were based on accepted standards of valuation and fixed rules of evidence. *Id.* at *5-6. As the court reasoned,

> the fact that a trial was needed does not, by itself, bar an award of prejudgment interest. Nor does the fact that the jury was presented with more than one estimate bar an award of prejudgment interest. Instead, there are known standards of value— the tariffs per minute of use—that make it possible to ascertain the damages as of a particular time.

*Id.* at *11. *See also Harlan*, 644 N.E.2d at 618-19 (prejudgment interest should have been awarded to plaintiff, where the damages that the plaintiff sustained from losing research animals that plaintiff bred for sale after a malfunction of defendant's automatic water valves could be ascertained from an estimate of animals' fair market value that was prepared by plaintiff).

If a plaintiff's damages are ascertainable and an award of prejudgment interest is warranted, interest may be computed "from the time the principal amount was demanded *or* due." *See Abex Corp. v. Vehling*, 443 N.E.2d 1248, 1260 (Ind. Ct. App. 1983) (emphasis added). Accordingly, the case law is replete with examples of courts awarding prejudgment interest from the date of the injury-producing event through the date of judgment or trial. For instance, in *Simmons*, the Seventh Circuit affirmed the trial court's grant of prejudgment interest "from the date of the fire to the date of the entry of judgment." 762 F.2d at 607. Similarly, in *Thrifty Call*, the Southern District of Indiana computed interest from the date that the defendant would have owed the tariffs to Ameritech, but for its avoidance of paying them via its fraudulent scheme, through the Friday before trial began. 2005 U.S. Dist. LEXIS 3687 at *3, 17-18. *Accord Harlan*, 644 N.E.2d at 619 (reversing trial court's decision not to award prejudgment interest on lost market

value component of plaintiff's damages, where plaintiff's "lost market value damages became complete at the moment the last animal died").

The present case falls directly in line with *Simmons*, *Thrifty Call*, and *Harlan*, in that as of August 15, 2016, IRG's electrical and environmental damages from the flood were complete, ascertainable, and due for payment pursuant to IRG's contract with the Insurers. The flood occurred on August 15, 2016 and caused losses covered under IRG's contract with the Insurers. By implication, as of August 15, 2016, the Insurers were contractually obligated to pay the full cost of restoring IRG's electrical infrastructure at the Facility to its pre-flood capacity and remediating the extensive contamination that the flood caused—as the jury ultimately found. As such, the Insurers' contractual payment obligations to IRG became due on August 15, 2016.

Furthermore, IRG's electrical and environmental damages were complete and ascertainable as of the date of the flood, notwithstanding the fact that the extent of IRG's damages became known over time. *See Simmons*, 762 F.2d at 607-08 (awarding prejudgment interest from date of fire despite Pinkerton's objection that jury's method of calculating manufacturer's damages included comparison of salvage proceeds with inventory price lists "from after the time of the fire," explaining that "damages must be *ascertainable* as of a particular time (not actually ascertained prior to trial) according to known *standards* of value (not liquidated amounts)") (italicization in original).

After the flood, IRG assembled a proof of loss detailing its electrical and environmental damages. This proof of loss was admitted by stipulation during the trial as Exhibit 12. At trial, Mark Miley, IRG's CFO and COO, testified that this proof of loss was submitted to the Insurers and was denied. Tr. p. 546: 21 – p. 548: 14. The aggregate amount of IRG's damages set forth in this proof of loss was $21,639,432. $10,474,422 of this figure related to IRG's electrical damages,

which were detailed in an itemized estimate prepared by Ben Rosolowski of CPI Group. The remaining $11,165,010 concerned IRG's environmental damages, as set forth in estimates from Hull & Associates, Inc. attached to the proof of loss. At trial, the jury heard testimony from Mr. Rosolowski that the costs for the same electrical work specified in his earlier estimate attached to the proof of loss had increased due to inflation. Mr. Rosolowski's adjustments for inflation were reflected in his updated estimate admitted as Exhibit 262, showing costs of $11,577,827. Similarly, the jury heard testimony from IRG's environmental expert, Dr. Delaney, that the earlier estimates of the costs for completing environmental remediation at the Facility would have to be adjusted upward due to inflation.

In closing, IRG requested an award of $11,577,827 in electrical damages set forth in Mr. Rosolowski's revised estimate and $13,141,216 in environmental damages. The latter number was the product of applying the inflation rate of 17.7 percent to the $11,165,010 in environmental damages set forth in the Hull estimates attached to IRG's proof of loss in Exhibit 12. Down to the penny, the jury awarded IRG what it demanded in compensatory damages for its breach of contract claim. *Accord Simmons*, 762 F.2d at 594 ("the jury found in favor of Simmons and awarded it the amount of damages claimed"); *Thrifty Call*, 2005 U.S. Dist. LEXIS 3687 at *5 ("[t]he jury adopted the middle of the three estimates [in rendering a verdict for Ameritech], to the penny").

Accordingly, the jury's award is the product of a "simple mathematical calculation," *Cincinnati Ins.*, 723 N.E.2d at 441, and provides further support for the proposition[1] that as of August 15, 2016, IRG's damages were ascertainable in accordance with accepted standards of valuation: IRG's proof of loss, its electrical and environmental estimates, and inflation rates set by

---

[1] The fact that a jury award differs from the amount sought does not in and of itself indicate that prejudgment interest is inappropriate. *Pub. Service Co. v. Bath Iron Works Corp.*, 773 F.2d 783, 796 (7th Cir. 1985).

7

the government.[2] Further, the Insurers cannot credibly argue that this case involves a good faith dispute concerning IRG's damages, as the jury's verdict necessarily meant that it found that the Insurers adjusted IRG's claim in bad faith in order to avoid paying what they contractually owed to IRG beginning on August 15, 2016. And finally, while the Insurers attempted to challenge IRG's evidence regarding its damages from the Insurers' breach, *Simmons*, *Thrifty Call*, and *Harlan* demonstrate that this challenge poses no barrier to an award of prejudgment interest.

IRG's insurance policies do not specify an interest rate. Thus, the award of prejudgment interest is set at the prevailing 8% rate. *See Song*, 76 N.E.3d at 939; IND. CODE § 24-4.6-1-101. IRG requests that the Court amend the judgment by adding an award of $13,544,681.10 of prejudgment interest, which is the product of applying the 8% per annum statutory rate to the period between August 15, 2016 and June 20, 2023 to $24,719,043, the jury's award. With this award, IRG may finally be made whole for the Insurers' bad faith efforts to avoid honoring their contract with IRG, which to this day has deprived IRG of the full use of its Facility. *Frey v. Hotel Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) ("Courts award prejudgment interest because compensation deferred is compensation reduced by the time value of money, and only prejudgment interest can make the plaintiff whole") (internal quotations omitted).

In the alternative, should the Court decline to find that IRG's electrical and environmental damages were complete, ascertainable, and due to be paid for by the Insurers as of August 15, 2016, IRG asks that the Court award prejudgment interest between August 23, 2019 and June 20, 2023. The Insurers denied IRG's claim on August 23, 2019[3], and the jury found that the Insurers

---

[2] An "awareness of general inflation and a constant depreciation and cheapening of money is within the zone of discretion given the trier of facts when assessing damages." *Colonial Discount Corp. v. Berkhardt*, 435 N.E.2d 65, 67 (Ind. Ct. App. 1982).

[3] As the Court is aware, however, many of the events that supported the jury's determination that the Insurers dealt with IRG in bad faith occurred long before August 23, 2019. By way of example only, these

breached their contract when they refused to make additional payments to IRG beyond those that they had made up to that point. Thus, while IRG may be awarded prejudgment interest beginning from the date of the flood—indeed, IRG believes that a contrary ruling would result in a windfall to the Insurers—if the Court disagrees, IRG may nonetheless receive prejudgment interest computed from August 23, 2019 through June 20, 2023. Using the same standards as those in the preceding paragraph, this would result in an award of $7,568,767.80 in prejudgment interest.

## CONCLUSION

For the above reasons, IRG respectfully requests that the Court amend the judgment by adding $13,544,681.10—or failing that, $7,568,767.80—in prejudgment interest to IRG's compensatory damages award on its breach of contract claim.

---

include the Insurers' decisions to withhold loss estimates it received from JS Held, the first of which was prepared in 2016, and the Insurers' retention of IRG's consultant Jeff Pope, which occurred in 2017.

DATED this 3rd day of July 2023                                   Respectfully submitted,

                                                       By:    /s/ *Mark E. Miller*
                                                                Mark E. Miller
                                                                Brian G. Friel
                                                                Benjamin W. Massarsky
                                                                William T. O'Neil
                                                               MILLER FRIEL, PLLC
                                                               2445 M Street NW, Suite 910
                                                               Washington, DC  20037
                                                               Tel: (202) 760-3160
                                                               Fax: (202) 459-9537
                                                               millerm@millerfriel.com
                                                               frielb@millerfriel.com
                                                               massarskyb@millerfriel.com
                                                               oneilw@millerfriel.com

                                                        By:    /s/ *Clint A. Zalas*
                                                               Clint A. Zalas
                                                               LEE & ZALAS, P.C.
                                                               54391 30th Street
                                                               South Bend, Indiana 46635
                                                               Tel: (574) 232-5923
                                                               Fax: (574) 232-5942
                                                               cazalas@lgzlegal.com

                                 *Attorneys for Plaintiff Indiana GRQ, LLC*

**CERTIFICATE OF SERVICE**

    I, Benjamin W. Massarsky, hereby certify that on July 3, 2023, a copy of the foregoing was served electronically on the parties listed below:

    Peter E. Kanaris
    David E. Heiss
    Hinshaw & Culbertson LLP
    151 N. Franklin Street, Suite 2500
    Chicago, Illinois 60606
    dheiss@hinshawlaw.com
    pkanaris@hinshawlaw.com

    Jennifer J. Kalas
    Hinshaw & Culbertson, LLP
    322 Indianapolis Blvd.
    Suite 201
    Schererville, IN 46375
    Tel: (219) 864-4521
    Fax: (219) 864-5052
    jkalas@hinshawlaw.com

    Mitch Orpett
    David Schroeder
    Tribler Orpett & Meyer P.C.
    225 West Washington, Suite 2550
    Chicago, IL 60606
    maorpett@tribler.com
    deschroeder@tribler.com

    /s/ *Benjamin W. Massarsky*
    Benjamin W. Massarsky